# FREEBORN GIBSON

## v.

## JAMES LEONARD.

*Filed at Ottawa October 31, 1892.*

1. NEGLIGENCE—*when and out of what arises actionable negligence—person to whom a duty is owed.* Actionable negligence, or negligence which constitutes a good cause of action, grows out of a want of ordinary care and skill in respect to a person to whom the defendant is under an obligation or duty to use ordinary care and skill.

2. SAME—*owner of building as against a mere licensee.* The owner of land and of buildings assumes no duty to one who is on his premises by permission only, and as a mere licensee, except that he will refrain from willful or affirmative acts which are injurious. Therefore a person who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pit-falls.

3. The members of a fire patrol forced open the door of a building then on fire, and entered the main floor and basement, and while using an elevator the rope broke, and the counter-weight, which was not suitably secured in its place, fell and injured one of them. The owner of the building was not present and did nothing to induce the entry: *Held,* that the owner of the building was not liable to the party injured, although the elevator and its appliances were not safely constructed and maintained.

4. SAME—*must be the cause of the injury complained of.* It is well settled rule of law, that when the breach of duty or negligence alleged is not the cause of the injury complained of, there can be no recovery.

So when the breach of a city ordinance does not cause, or contribute to cause, a personal injury by an elevator in a building, no action will lie on account of such breach.

5. Same — *as against a mere licensee.* It is the well settled doctrine that a mere naked license or permission to enter premises does not impose an obligation on the owner or person in possession to provide against the damages of accident. This applies equally to cases where the license is given by law. The statute (chap. 142) giving fire patrols the right to enter buildings to put out fires therein and save property, is but an enactment in express terms of the common law applicable in such case, and confers no power.

6. Same — *of owner of elevator — under ordinance — in whose favor action is given.* An ordinance of a city provided that "in every factory, work-shop, or other place or structure where machinery is employed, the belting, shaftings, gearing, elevators and every other thing, when so located as to endanger the lives and limbs of those employed therein while in discharge of their duties, shall be, so far as is practicable, so covered or guarded against any injury to such employes." *Held,* that such ordinance was intended for the protection of employes, only, and that one not an employe, but a mere licensee, who was injured in consequence of the neglect of the owner of an elevator to have the same properly guarded, could not recover damages on account of such neglect.

7. Same — *parties — who may sue for an injury — who may avail of remedy.* Where a statute gives a remedy, only such persons as are intended to be benefited or protected by it can rely on its violation as giving a cause of action. So if a statute prohibits a thing for the benefit of a certain class, as, employes, persons of that class can alone maintain an action under the statute.

8. License — *when law gives one to enter a building to put out fire.* Where a building in a city is on fire, the members of a fire patrol, in an effort to extinguish the fire and save property therein, may force open doors, in the absence of the owner or occupants, and they may do this even in the teeth of an express prohibition on the part of the owner, and in so doing they will not be trespassers. In such case the law licenses the action. This permission to enter a man's premises has no necessary connection with the owner's interest, and is always given on public grounds.

9. Where a fire breaks out in a city, the public authorities, and even private persons, may forcibly enter upon adjacent premises, as they may find it necessary or convenient, in their efforts to extinguish or arrest the spread of the flames. In such a case, though they had no permission from the owners, they will have an implied license by law to enter to save the property.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. BRANDT & HOFFMAN, and Mr. J. S. KENNARD, Jr., for the appellant:

It is elementary that when an injury results to a third person from a faulty or defective construction of premises, or their bad condition at the time of the demise, the landlord is liable, notwithstanding the demise: 1 Taylor on Landlord and Tenant, sec. 175; 2 Shearman & Redfield on Negligence, sec. 704; *Stephani* v. *Brown,* 40 Ill. 428; *Gridley* v. *Bloomington,* 68 id. 51; *Peoria* v. *Simpson,* 110 id. 300; *Riechenbacher* v. *Pohlmeyer,* 8 Bradw. 217.

Not only had Gibson an express statutory right to be where he was when hurt, but any private person has, at common law, a right to enter upon the land of another to save property from fire, etc. *Tayler* v. *Plymouth,* 8 Metc. 465; *Proctor* v. *Adams,* 113 Ill. 376; *Learoyd* v. *Godfrey,* 138 Mass. 215.

As to the right of plaintiff to recover, see *Severy* v. *Nickerson,* 120 Mass. 306; *Fox* v. *Sackett,* 10 Allen, 535; *Lawless* v. *Railroad Co.* 136 Mass. 1; *Casting Co.* v. *Railroad Co.* 109 Ill. 277; *Hyde Park* v. *Gay,* 120 Mass. 589; *Railroad Co.* v. *Brake,* 125 Ill. 393; *Parker* v. *Bernard,* 135 Mass. 116; *Seymour* v. *Maddox,* 16 Ad. & E. 320; *Armstrong* v. *Medbury,* 67 Mich. 250; *Matthews* v. *Bensel,* 51 N. J. L. 30; *Railroad Co.* v. *Stout,* 17 Wall. 657.

Messrs. WALKER & EDDY, for the appellee:

In every case before the evidence is left to the jury there is a preliminary question for the judge—not whether there is literally no evidence, but whether there is any upon which a a jury can properly find a verdict for the party upon whom rests the burden of proof. *Pleasants* v. *Fout,* 22 Wall. 120; *Improvement Co.* v. *Munson,* 14 id. 448; *Bowditch* v. *Boston,*

101 U. S. 318; *Parks* v. *Ross,* 11 How. 362; *Cole* v. *Hobb,* 7 Gill, 20; *Tyson* v. *Rickard,* 3 H. & J. 109; *Vinton* v. *Schawab,* 32 Vt. 612; *Boland* v. *Missouri, etc. Co.* 36 Mo. 484; *Pray* v. *Gracelon,* 17 Me. 45; *Head* v. *Sleeper,* 20 id. 314; *Poleman* v. *Johnson,* 84 Ill. 269; *Orchid* v. *Railroad Co.* 111 id. 202; *Phillips* v. *Dickinson,* 85 id. 11; *Simmons* v. *Railroad Co.* 110 id. 340; *Frazer* v. *Howe,* 106 id. 563; *Barblot* v. *Bank,* 119 id. 259; *Railroad Co.* v. *O'Connor,* 115 id. 254; *Insurance Co.* v. *Scammon,* 123 id. 601.

To constitute a negligence there must be some duty owing from the party whose negligence occasions the loss to the party injured. Deering on Negligence, sec. 3; Wharton on Negligence, sec. 3.

Negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty to the injury of another. *Nicholson* v. *Railway Co.* 41 N. Y. 529.

A mere passive acquiescence on the part of the owner or occupant in the use of real property by others does not involve him in any liability to them for its unfitness for such use. They take all the risk upon themselves, and have no right to complain of any defect in the premises, even though caused by the direct act of the owner, unless the act is malicious, or is committed in the notice of the fact that strangers are likely to approach, and without any effort to warn them of the danger, under circumstances which justify a belief that the owner was indifferent to the injuries which might happen to them. Shearman & Redfield on Negligence, sec. 499, and authorities cited; Deering on Negligence, sec. 318; *Severy* v. *Nickerson,* 120 Mass. 306; *Hargreaves* v. *Deacon,* 25 Mich. 1; *Balch* v. *Smith,* 7 H. & N. 736; *Gautret* v. *Edgerton,* L. R. 2 C. P. 371; *Burdick* v. *Cheadle,* 26 Ohio St. 393; *Railway Co.* v. *Bingham,* 29 id. 364; *Parker* v. *Portland Pub. Co.* 69 Me. 173; *Mathews* v. *Bensel,* 51 N. J. L. 30; *Murray* v. *McLean,* 57 Ill. 378; *Buckingham* v. *Fisher,* 7 id. 121.

The owner or occupant is not bound to make the land or buildings thereon safe for any purpose which is unlawful or improper, or for which he could not reasonably anticipate that it would be used. He is not responsible for the use of his property in a mode for which it was obviously never designed, even though such use was intended for his benefit. Shearman & Redfield on Negligence, sec. 500.

An owner of machinery is not liable to one who needlessly sets it in motion. Wharton on Negligence, sec. 344; Shearman & Redfield on Negligence, sec. 590.

Appellee was under no obligation to render the elevator safe for any purpose for which he could not reasonably anticipate that it would be used.

Gibson and his comrades were mere licensees on the premises by implied license, and defendant owed plaintiff only such duty as might be due licensees. *Proctor* v. *Adams,* 113 Mass. 376; *Severy* v. *Nickerson,* 120 id. 306.

. Mr. S. LEONARD BOYCE, and Mr. H. H. MARTIN, also for the appellee:

Appellee owed no such duty to appellant, at common law, as renders him liable to the latter for the injuries received. *Morgan* v. *New York Co.* 19 Blatch. 239; *Victory* v. *Baker,* 67 N. Y. 367; *Davis* v. *Society,* 129 Mass. 367; *Sweeney* v. *Railroad Co.* 10 Allen, 368; *Cahill* v. *Layton,* 57 Wis. 600; *United States Co.* v. *Rourcke,* 10 Bradw. 474; *Nicholson* v. *Railway Co.* 41 N. Y. 525; *Cusic* v. *Adams,* 115 id. 55; *Larmon* v. *Iron Co.* 101 id. 91; *Railroad Co.* v. *Bingham,* 29 Ohio St. 364; *Converse* v. *Walker,* 30 Hun, 596.

It is well settled that only such persons as are intended to be benefited or protected by a statute can rely on a violation of the statute as a cause of action. *O'Donnell* v. *Railroad Co.* 6 R. I. 211; *Railroad Co.* v. *Payne,* 29 Kan. 166; *Railroad Co.* v. *Feathers,* 10 Lea, 103; *Harty* v. *Railroad Co.* 42 N. Y. 468; *Bell* v. *Railroad Co.* 72 Mo. 59; 1 Shear. & Redf. on Neg. 13.

Mr. JUSTICE BAKER delivered the opinion of the Court:

James Leonard, appellee, was owner of the building on West
Lake street, in the city of Chicago, which was numbered 47
and 49. It was constructed of brick, was four stories and a
basement high, and was occupied by various tenants for busi-
ness purposes. The main floor and basement were leased to
one Sues, who carried on therein a wholesale liquor business.
The lease to said Sues was dated May 1, 1888, and at the
time of the fire herein mentioned the premises, and the hoist
or elevator thereon, were in substantially the same condition
that they were in at the date of the demise. Said elevator
ran only from the main floor to the basement, and it consisted
of an unenclosed floor or platform about six feet long and four
feet wide, with an upright timber at each end and a cross-
beam at the top, uniting them, and to the center of the cross-
beam a rope was attached. It is not necessary to state
anything further in regard to the construction of the elevator
and the mechanism connected with it, except to remark that
there was a counter weight, which consisted of a piece of cast
iron three feet long, some fourteen or sixteen inches wide and
three inches thick, and a rope by which said counter weight
was suspended and moved up and down.

Shortly before midnight of May 28, 1888, a fire broke out
in the upper stories of the building in question. Freeborn
Gibson, the appellant herein, was a member of the fire insur-
ance patrol. The company to which he belonged responded
to the alarm, but when it got to the scene of the fire the en-
gines were already at work throwing water. The patrol forced
open the door of the main floor and spread waterproof tar-
paulins over the goods stored there. There was an outside
pair of stairs that led to the basement, but the door at the
foot of the stairs and leading into the basement was locked,
and also braced on the inside and barricaded with goods.
There were no stairs inside the building from the main floor
to the basement, and the only inside communication from the

one to the other was the elevator or hoist. The platform of the elevator was on the basement floor and two or three barrels of whisky were standing on it. When the goods on the main floor had been covered with tarpaulins, two of the patrol jumped from the main floor to the heads of the barrels, and then spread a few tarpaulins in the basement. In the meantime the other members of the patrol were sweeping water from the main floor. By the direction of the superintendent of the patrol the two men in the basement then rolled the barrels of whisky from the elevator, and when this was done they were raised, with the elevator, to the main floor, by the superintendent. Shortly afterwards the superintendent ordered six of the patrol to go to the basement, and when they got on the elevator he proceeded to let them down by means of certain ropes forming part of the mechanism. When the elevator was within a very short distance of the basement floor, the rope which held the counter-weight broke, at a distance of about fifteen inches above said weight, and the weight became detached from the post up and down which it traveled, and it fell a distance of about sixteen feet to the bottom of the basement. Gibson, the appellant, was one of the men on the elevator, and the counter-weight fell on one of his legs and drove it through the floor of the elevator, and so injured it as that it had to be amputated above the knee.

It is charged in the declaration that the counter-weight was insecurely fastened in grooves which were insufficient for the purpose, and that it was in a highly unsafe and dangerous condition, without any box or cover around it to prevent it from injuring persons in or about the elevator, when it was easily practicable to have covered, boxed or guarded it, and also charged that the rope by which the counter-weight was suspended and moved up and down, was of insufficient size and old and rotten, and of insufficient strength to hold the weight, and highly dangerous to persons using, operating or about the elevator.

The fundamental inquiry in this case is, whether or not appellee owed a duty to appellant to so construct, keep and maintain the elevator or hoisting apparatus as that it should be a safe means for his transportation from one story of the building to another. Actionable negligence, or negligence which constitutes a good cause of action, grows out of a want of ordinary care and skill in respect to à person to whom the defendant is under an obligation or duty to use ordinary care and skill. The owner of land and of buildings assumes no duty to one who is on his premises by permission only, and as a mere licensee, except that he will refrain from willful or affirmative acts which are injurious. As was said in *Sweeny* v. *Railroad Co.* 10 Allen, 368 : "A licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pit-falls. He goes there at his own risk, and enjoys the license subject to its concomitant perils."

When, at the time of the fire, the members of the fire patrol forced open the door and entered the main floor and basement of the building, they were not trespassers, nor did they enter the premises by virtue of a license, either express or implied, from either appellee, the owner of the building, or Sues, his tenant. The facts that the premises were closed for the night, that the doors were all locked and barred, that no ingress was possible without using force and violence and breaking the doors, and that the lawful owners and occupants were all absent and had no knowledge of either the fire or the proposed entry, and all the other surrounding circumstances, preclude any theory of license from the owner or tenant. A license to enter upon the land and premises of another is not always based on the permission of the owner,—it is sometimes given by the law. In Cooley on Torts, 313, it is said : "A third class of licenses comprehends those cases in which the law gives permission to enter a man's premises. This permission

has no necessary connection with the owner's interest, and is always given on public grounds. An instance is, where a fire breaks out in a city. Here the public authorities, and even private individuals, may enter upon adjacent premises, as they may find it necessary or convenient, in their efforts to extinguish or to arrest the spread of the flames." In *Proctor* v. *Adams*, 113 Mass. 376, GRAY, C. J., said: "In such a case, though they had no permission from the plaintiff or any other person, they had an implied license by law to enter on the beach to save the property. It is a very ancient rule of the common law, that an entry upon land to save goods which are in jeopardy of being lost or destroyed by water, fire or any like danger, is not a trespass." So appellant, when he entered the building, was, by the rules of the common law, a mere naked licensee, under a license given by the law itself, in no way emanating from appellee, and by virtue of which he would have had a right of entry even in the teeth of an express prohibition on the part of appellee. It is the well settled doctrine that a mere naked license or permission to enter premises does not impose an obligation on the owner or person in possession to provide against the dangers of accident, and it surely can not detract from the applicability of the rule that the license or permission has its origin in a source other than such owner or person in possession.

It is provided in section 1 of chapter 142 of the Revised Statutes, that boards of underwriters, shall have power to provide a patrol of men, and a competent person to act as superintendent, to discover and prevent fires, with suitable apparatus to save and preserve property or life at and after a fire, and that the better to enable them so to act with promptness and efficiency, full power is given such superintendent and such patrol to enter any building on fire, or which may be exposed to or in danger of taking fire from other burning buildings, subject to the control of the fire marshal of the city, and at once proceed to protect and endeavor to save the property

therein, and to remove such property, or any part thereof, from the ruins after a fire. So far as the matter here involved is concerned, the only effect of said statute was to give in express terms, to appellant, as a member of the fire patrol, the same license and permission of entry that was already given to him as an individual by the common law. Notwithstanding said statute, appellant was a mere licensee under a permission to enter given by the law.

Appellant was not invited or induced by appellee to go into the building, but he was lawfully there. Both the common law and the statute gave him the right to go there. He being there lawfully, is there any evidence tending to show that appellee invited him to make use of the elevator or hoist? If appellee had done anything to induce him to come into the building, then it might possibly be said that he had a right to rely on the appellee's keeping the premises, including the elevator, in a safe condition while he was there. But here there was not even a license from appellee,—the only license was from the law; and so he had no right to conclude that there was an assurance from appellee that either the premises or the elevator was safe. Besides this, the construction of the elevator or hoist was such as to indicate that it was intended for a freight-hoist. It was not at the main floor, apparently ready to transport persons to the basement, but was standing on the basement floor and loaded with barrels of whisky, thereby indicating the use it was put to. These, surely, were not circumstances of enticement, allurement or invitation. It may be conceded that it was the duty of the fire patrol to go down into the basement and cover with tarpaulins the goods there stored; but at the very first, two of the men jumped down the elevator shaft to the tops of the barrels standing on the elevator, and from there to the basement floor. No reason is perceived why the other men could not have reached the basement by the same means. The two men could readily have removed the brace from the basement door, and the

goods there piled, and thus have afforded ingress to the basement, and the evidence shows that this was in fact done just after the accident. And besides all this, the patrol had short ladders, with which the basement could easily be reached by placing them in the elevator shaft, and this means of ingress and egress was also adopted after the accident occurred. The conclusion must be that there was no invitation to use the elevator, growing out of either the conduct of the appellee, or the condition in which the elevator was found, or the necessities of the circumstances in which the fire patrol was placed. There is nothing in the case to indicate an invitation, either express or implied, to either enter the premises or use the elevator, and there being no invitation or inducement on the part of appellee, no duty was imposed upon him to leave the elevator in such condition, when the building was closed at night, as that it could be operated with safety. It is true that appellee might have anticipated that the fire patrol might at some time have occasion to enter his building, and go from the main floor to the basement; but it is equally true in all cases where the entry is by a naked license, that the licensor has knowledge that such licensee may at some time enter the premises; and yet, as we have above stated, the general rule is, that the licensor assumes no duty to the licensee, except the duty to refrain from affirmative or willful acts that work an injury.

We have thus far omitted any reference to the ordinances of the city of Chicago. Four of said ordinances were pleaded in the declaration and introduced in evidence. It is urged by appellee, that while the power of the legislature is plenary to create civil rights and duties between citizens, yet that a municipal corporation can not create such rights and duties, and that therefore the breach of a duty required by a city ordinance will not enable a plaintiff in a civil action to recover. For his contention in this behalf he cites as authority the following cases: *Fuchs* v. *Schmidt*, 8 Daly, 317, *Heeny* v.

*Sprague*, 11 R. I. 456, *Van Dyke* v. *Harbeson*, 1 Disn. (Ohio,) 532, and *Railroad Co.* v. *Ervin*, 89 Pa. St. 71. For the purposes of this litigation it is not essential to determine the question thus raised, for in the view we take of said ordinances we may, without detriment to appellee, assume that it is competent for the city to create, by ordinances, new civil liabilities between individuals.

It is a rule of law too well settled to require the citation of authorities, that where the breach of duty alleged is not the cause of the injury received, there can be no recovery. Sections 1056 and 1057 of the ordinances were here wholly immaterial. The absence of either a fire-proof shaft, or of metal doors in the shaft, or of catches or fastenings on the doors which could only be opened on the inside of the shaft and were entirely under the control of the operator, did not cause or contribute to the personal inquiry that was received by appellant.

Section 1135 of the ordinances imposes penalties for not having elevators inspected every six months, for not procuring certificates of inspection, and for not framing and posting such certificates. It is manifest that if a person was injured in or by an elevator under circumstances such as would not otherwise impose a liability upon the owner of such elevator, then the mere failure to conform to the requirements of this section would not create a civil liability to the person so injured, for in the nature of things a failure to obtain, frame or post a certificate of inspection could not be the proximate cause of the injury. It seems plain that said section, also, is immaterial, so far as showing a cause of action herein is concerned.

Section 1074 of the ordinances requires more attention. It reads as follows: "In every factory, workshop, or other place or structure where machinery is employed, the building, shafting, gearing, elevators and every other thing, when so located as to endanger the lives and limbs of those employed

13—143 ILL.

therein while in discharge of their duties, shall be, so far as practicable, so covered or guarded as to insure against any injury to such employes." The claim is that it was a violation of this section not to box or guard with wire, or otherwise protect, the counter-weight. Having in view said section of the ordinances, counsel for appellant places great reliance upon the doctrine announced in *Parker* v. *Barnard,* 135 Mass. 116. In that case a police officer was acting under a rule of the police commissioners, which made it his duty to examine, in the night-time, doors and windows, and see that they were properly secured, and if found open, give notice to the inmates, or if the building was unoccupied, make fast the doors and windows. He crossed the threshold of the elevator entrance of a building the doors of which were open, and was precipitated down the well of an elevator, which was unguarded. The statute of the State that was there involved provided that in any store or building in which there should exist or be placed any hoistway, elevator or well-hole, the openings thereof should be provided with and protected by good and substantial railings, and with such good and sufficient trap-doors with which to close the same, as should be directed and approved by the inspector of buildings, and that such trap-doors should be kept closed at all times except when in actual use by the occupant or occupants of the building having the use and control of the same. It was held that the police officer was a licensee, and that if the entry of a licensee is permissive only, then there can ordinarily be no recovery for a neglect properly to guard the premises. The court then held that conceding this, still, since it appeared that the injury proceeded from the neglect of the obligation imposed by the statute, it was to be determined whether the protection intended to be afforded by means of the statute was not for the benefit of all those who were upon the premises in the performance of lawful duties, even if they were but licensees, as well as for the benefit of those who were there by inducement

or invitation, express or implied,—and thus whether the neglect might not be made the foundation of an action. The conclusion was, that the statute there in question was intended to provide a protection to all who were in buildings in the lawful performance of their duties, and that the policeman, when he entered the building where he was injured, was in the class of persons so protected. But here, in section 1074 of the ordinances of Chicago, instead of general language, such as was used in the statute considered in *Parker* v. *Bernard,* is found language which shows, in express terms, that the ordinance was intended only for the protection and benefit of employes in factories, workshops, and other places or structures where machinery is employed. It provides that in the places mentioned, "the belting, shafting, gearing, elevators and every other thing, when so located as to endanger the lives and limbs *of those employed therein* while in the discharge of their duties, shall be, so far as practicable, so covered or guarded as to insure against any injury *to such employes*."

In 1 Comyn's Digest, "Action upon Statute, F," it is said: "In every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of the wrong done to him contrary to said law." And in *O'Donnell* v. *Railroad Co.* 6 R. I. 211, it is added, by way of explanation, "confining the remedy to such things as are enacted for the benefit of the person suing." In *Ricketts* v. *Railway Co.* 3 J. Scott, 160, an act of parliament provided that the railway company should make and maintain "fences for separating the land taken for the use of the railway from the adjoining lands not taken, and protecting such lands from trespass, or the cattle of the owners or occupiers from straying thereout by reason of the railway," and the cattle of Ricketts crossed from his own close into a close adjoining the railroad, and thence, through some defect of the fence, to the railroad, and were there killed. The court held that the com-

pany owed no duty to Ricketts to maintain the fence, and that Ricketts had no right to recover for the loss of the cattle. It was there said: "The act of parliament creates no general duty, but only a duty as between the company and the owners of the adjoining lands, and those in privity with them, and a stranger, as this plaintiff is, can not found an action upon an alleged breach of that duty."

The contention of appellee in this case, that only such persons as are intended to be benefited or protected by a statute can rely on a violation of that statute as giving a cause of action, is the established doctrine of the law. That such is the rule is shown by the decisions of the courts in *Ricketts* v. *Railway Co. supra*, *O'Donnell* v. *Railroad Co. supra*, *Harty* v. *Railroad Co.* 42 N. Y. 468, *Holmes* v. *Railroad Co.* 37 Ga. 593, *Bell* v. *Railroad Co.* 72 Mo. 50, *Railroad Co.* v. *Feathers*, 10 Lea, 103, and numerous other cases.

Our conclusions in the case at bar are, that appellant was not, at the time of the accident, within the class or classes of persons for whose protection ordinance 1074 was passed, and that he has no right of action against appellee, either at common law or by virtue of any of the ordinances that were introduced in evidence. Since appellee owed no duty to appellant, and was under no obligation to him either to keep his buildings and premises in a safe condition, or construct and maintain his hoist or elevator in such manner as that it could be safely used, it follows that it was not error for the trial court to instruct and direct the jury to return a verdict in favor of appellee.

The judgment of the Appellate Court, in affirmance of the judgment of the Superior Court is affirmed.

*Judgment affirmed.*