### The Webster Manufacturing Co. v. Dwight N. Goodrich.

1. PRACTICE—*Where Motion to Instruct Jury to Return Verdict for Defendant is Made at Close of the Evidence.*—Where the motion to instruct the jury to return a verdict for the defendant is made at the close of all the evidence, the question to be determined is whether there is evidence tending to sustain plaintiff's declaration sufficient to support a verdict for the plaintiff.

2. SAME—*Where Motion to Instruct Jury to Return a Verdict for the Defendant Should be Allowed.*—A motion to instruct the jury to return a verdict for the defendant having been made at the close of all the evidence, it should be allowed, where the evidence, both for plaintiff and defendant, with all the inferences which the jury might justifiably draw therefrom, is not sufficient to support a verdict for the plaintiff.

3. PROXIMATE CAUSE—*Where Breach of Duty is Not.*—Where the breach of duty alleged is not the proximate cause of the injury received, there can be no recovery.

4. MASTER AND SERVANT—*Assumed Risks of Employment.*—As between employer and employe, the latter assumes all the usual known dangers incident to the employment, and he also takes upon himself

the hazard of the use of defective tools and machinery, if after his employment, he knows of the defect, but voluntarily continues in the employment without objection.

**Trespass on the Case,** for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding.  Heard in the Branch Appellate Court at the October term, 1901.  Reversed.  Opinion filed November 11, 1902.

Appellee suffered the loss of four fingers of his left hand while working at a planing machine, operated by steam. He alleges in his declaration that appellant " wrongfully and negligently suffered the same to be and remain in bad and unsafe  repair and condition, and  the opening or top part of said planer to become too large in said opening and to remain in said bad and unsafe repair and condition."

The planing machine was what is known as a "joiner and planer."  It was used for planing off the surface of boards.  It consisted of planing knives revolving in an opening between two parts of a planing table.  The table is divided into separate parts known as the "front table" and the "back table."  The opening between these two parts is called the "throat."  The cutting edges of the knives are on a level with the surface of the back table, the height of which, as well as that of the knives, is stationary. The edges of the two tables on either side of the "throat" are parallel.  The height of the "front table" is adjustable by the operator.  It is, when in use, always a little lower than the "back table," the difference in height gauging the depth of the cut upon the surface to be planed off. When using the machine the operator holds the board firmly, pressing it down upon the front table and pushing it against the revolving knives.  When one end has gone over the knives, it has been planed so that it will pass onto the surface of "the back table" with perfect exactness. The knives revolve toward the "front table," creating thus a tendency to "kick back" the board pressed against them, unless it is held firmly in place.  If the cut is shallow the resistance of the knives is proportionately less.  Less strength is required to hold the board in position and there

is. less danger of its "kicking back." The resistance is less also with a large and heavy board than with one small and light.

At the time of the accident, appellee, who has been a carpenter all his life and is now over sixty years of age, was planing a pine board about eighteen inches long, six inches wide and about an inch and a half thick. The end of the board had passed over and was resting on " the back table." Its center was nearly over the knives. He had just transferred his left hand to that part of the board which had passed over the knives, and which rested on the surface of the back table. He states that he had " no more than got that other hand over there," when the board kicked out of his hands, and his left hand came in contact with the knives, causing the injury to his fingers.

O. W. DYNES, attorney for appellant.

SETH F. CREWS and RALPH CREWS, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant has waived all error except the one assignment that "the trial court erred in refusing to instruct the jury at the request of the defendant, after all the evidence was in, to return a verdict of not guilty."

The question presented therefore is, whether there was evidence tending to sustain appellee's declaration, sufficient to support a verdict for the plaintiff. Boyle v. I. C. R. R. Co., 88 Ill. App. 255–257, and cases there cited.

It is insisted by appellant's attorney that the evidence does not show appellant to have been guilty of actionable negligence constituting the proximate cause of the injury; that the conditions were obvious and apparent, incident to appellee's employment, the risk of which he had assumed; and that appellee has not presented evidence tending to show what caused the accident or that he was free from contributory negligence.

The only negligence charged is that the throat or opening between the tables in which the knives revolve was wider

than usual at the time of the accident, and wider than it ought to have been, and it is claimed that this constituted an unsafe and dangerous condition of the machine. There is testimony to the effect that as the tables were ordinarily adjusted, the width of the "throat" would be from two and one-quarter to two and five-sixteenths inches. It is said that at the time of the accident the width was from three and a half to four inches. No one seems to have measured it, and these are merely estimates. Appellee says that "as near as my eye would tell (I did not measure it), it was a four-inch opening." The width of the throat sometimes varied. as appellee testifies, according to the character of the work to be done. He states that after his hand had healed and he had returned to work in appellee's employ he measured the width twice. Once it was two and five-eighths inches open, and on the other occasion "the foreman of the millwrights was jointing some heavy stuff, and he went away and left it wide open, three and one-half inches." It does not appear why it was from three and a half to four inches wide at the time of the accident or who set it at such width.

There is testimony by one witness to the effect that it is harder to hold a board upon the planer when the throat is four inches wide than it would be at half that width, because there is more vibration, owing to the greater distance between the bearings upon the two tables on either side of the knives; that it requires more strength. But the strength required varies also with the size and thickness of the board, and must be applied accordingly. Another witness for appellant states that if the opening is too wide it "would have a tendency to sliver up the wood and throw the piece out of the hand." He states, however, that the board appellee was planing when hurt was "all right." It was not slivered. This testimony is the only evidence relied upon as proof that the alleged extra width of the throat had in fact anything to do with causing the board appellee was planing at the time of the accident to slip out of his hands. One end of the board had passed over the

knives revolving in the "throat," and the hand that was injured was holding it down on the back table. Appellee himself says that he "don't know what made it kick out of my hands," and refuses to say that the width of the throat had anything to do with the accident. He appears rather inclined to ascribe it to the character of the board, which, however, he had just previously passed twice over the same planer. This board was of pine, eighteen inches long, six inches wide, about an inch and a half thick and, both sides having just been planed, it had smooth surfaces. It was therefore more difficult to hold in place both because it was smooth and because it was light. This affords a natural and perhaps a sufficient explanation of its "kicking" out of appellee's hands, if for any cause he relaxed his vigilance and grasp. That the accident was caused or contributed to by the width of the throat is mere inference and conjecture, and this can not supply the place of evidence. The fact is testified to by one of appellant's witnesses that the width had been the same for more than four or five months, during which appellant and others had been daily using the machine without accident. It is evident, therefore, that it could be safely operated in that condition. This fact justifies as fully the inference that the accident was due to appellee's momentary want of care, as that it was due to the width of the throat. There being no evidence tending to show that the alleged negligence charged in the declaration was the proximate cause of the injury, there can be no recovery. As is said in Gibson v. Leonard, 143 Ill. 182–193, "It is a rule of law too well settled to require citation of authorities, that where the breach of duty alleged is not the cause of the injury received, there can be no recovery."

We are, moreover, compelled also to agree with appellant's contention that appellee assumed the risk incident to the use and operation of the machine with the conditions as they were. He had used the machine without accident, at least once a day on an average, for the three years during which he had been in appellant's em-

ploy. He was entirely familiar with it, with the danger to be avoided in using it and knew how to avoid it. The source of danger was open and obvious. It was apparent that any negligence in use of the planer which might bring his hand in contact with the knives was liable to result in an injury, such as he suffered. He had used it daily with the throat as it was at the time of the accident, for several. months previous. He testifies: "The idea was to hold it firm; if you did not hold it firm, it would kick out of your hands;" and he says: "If I had a wide and thin board, I took it to my bench and planed it by hand for fear of the planer." This was the only danger to be feared, that the hand of the operator might come in contact with the knives. If, as is argued, the hazard was increased with a wider throat, because it permitted the knives to apply an unusual and additional force to the plank in process of planing—a statement not sustained by the evidence—or because of increased vibration, the fact must have become as manifest to appellee by daily experience long before the accident, as it could be to any one. He says he "did not know it was out of order when it was open," until after he was hurt. He knew the conditions, however, perfectly, and whether he knew what constituted the difference, technically, between being in order and out of order, is not material, even if it had been shown that the alleged defect caused the injury, or that the machine was out of order. "That, as between employer and employes, the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after his employment, he knows of the defect, but voluntarily continues in the employment without objection, are familiar rules of law, often recognized by the decisions of this and other courts." Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329–333; Chicago Anderson Pressed Brick Co. v. Reinneiger, 140 Ill. 334.

The motion to instruct the jury to return a verdict for the defendant having been made at the close. of all the evi-

dence, it should have been allowed where the evidence, both for plaintiff and defendant, with all the inferences which the jury might justifiably draw therefrom, is not sufficient to support a verdict for the plaintiff. Foster v. Wadsworth-Howland Co., 168 Ill. 514–517, and cases cited.

The judgment of the Superior Court must be reversed without a remanding order.