## Dickinson McAllister, as Receiver, etc., v. Heinrich Jung, by next friend.

### Gen. No. 10,892.

1. ELEVATED RAILROAD STRUCTURE—*degree of care required concerning.* The law requires a company erecting and maintaining an elevated railroad structure upon which a live rail is used, only to exercise ordinary care and prudence to so erect and maintain the same as to preclude children of tender years from getting thereon.

2. ELEVATED RAILROAD STRUCTURE—*what not failure to exercise ordinary care.* A company owning and maintaining an elevated railroad structure upon which a live rail is used, is not guilty of a want of ordinary care in failing to construct means to prevent persons from climbing upon such structure at a point where there was no temptation so to climb thereon, notwithstanding such company did, at and near stations, construct means to prevent persons climbing upon such structure.

3. WARNING NOTICES—*when, not required.* It is not negligence for a company owning and maintaining an elevated railroad structure upon which a live rail is used, not to place warning signs thereon notifying the public of the danger from such rail.

4. PROXIMATE CAUSE—*when an accident is the, of an injury.* Where a child of tender years has climbed upon an elevated railroad structure upon which a live rail is used and has safely passed over such rail, but becoming frightened, stumbles and thereby falls against such rail, such stumbling is the proximate cause of the injury.

5. LIVE RAIL—*when injury to child resulting from contact with, does not confer right of action.* Where the defendant owned and maintained an elevated railroad structure upon which a live rail was employed and a child of tender years climbed upon such structure and came in contact with such rail and was injured, a recovery by him will not be sustained where there was no evidence tending to show that children of tender years or others had been in the habit of climbing upon such structure at the point where the injury resulted for the purpose of play, or otherwise, prior to the accident, and where the rail on the top of such structure was not exposed and unguarded and easy of access from the street and where there was nothing on the surface of the

roadbed or top of the structure attractive or alluring to childish instincts, and where such company had no reason to anticipate that children or others would endeavor to resort to such structure at that place.

6. TRESPASSER—*duty of occupant of premises to.* The general rule is that the law does not require the owner or occupant of premises to keep them in a safe condition for the benefit of trespassers and those who come upon them without invitation, express or implied; to this rule, however, there is an exception, (not applicable, however, to this case) that if such owner has left upon such premises, exposed and unguarded, things of such a character as to be attractive to a child of tender years, appealing to his childish curiosity and instincts, and which causes him injury, such owner may be held liable, even though the child may be a technical trespasser.

7. NEGLIGENCE—*when, becomes question of law.* The question of negligence becomes one of law where the facts are not disputed.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed February 13, 1904.

**Statement by the Court.** This is an appeal from a judgment in favor of appellee, plaintiff below, in an action to recover for personal injuries received upon the elevated railroad structure operated by appellant in Chicago, to the road-bed of which appellee had climbed from the street below in search, as he states, of a ball. Appellant's road is operated by motive power applied through a third rail charged with an electric current, and appellee's injuries were caused by contact with this "live rail."

Appellee was at the time of the accident a little over ten years of age. September 15, 1898, he left home to look at a steam roller, and seeing boys under the elevated road where it crosses Sawyer avenue, he went there and was told that there was a ball—he thinks a foot ball—upon the structure. With another boy, he undertook to climb up the pillars supporting the road-bed by means of the so-called "lattice work" made by the iron cross pieces used to brace the columns on which the elevated structure rests. When he got to the top of this "lattice work" he was about six and a half feet, as he says, below the top of the tracks. From there he managed to get on top of the column. He describes how he got up as follows: "I put my head

through these little holes there and muscled myself up; I was inside the track where the cars run, and my head right in there and by working my body I was able to climb up; I just could get through, and in that way I wormed myself up. I stuck my toes in any place I could find until I got up, and then got on top of the structure. * * * After I squeezed myself up I stepped over on the rail and along on this structure and on the place where the workmen walk." He "got frightened by two trains coming from both ways" and stumbled, falling on or against the third rail, and became unconscious. He says he did not know there was any danger nor whether there was any electricity there, and he was not afraid of falling, the only danger he knew of. It was the first time he ever climbed up.

The boy who was with him testifies that after one unsuccessful effort, he tried it again, following appellee, and that when he reached the top, appellee told him to "look out for the live rail," that it had electricity and that is what the cars run on. The witness said this frightened him and he came down.

On cross-examination appellee says he does not know whether he told the boy who was following him to look out for the third rail; but he stated on direct examination that he "did not know the danger was in electricity. I knew that it propelled the cars" (referring to trolley cars). " I did not know whether or not the electricity was dangerous to boys or men."

Appellee's father is "an electrical worker for the Western Electric," where he has been working for fourteen years. He says "the boy might have known all his life that I worked around electricity. I do not know."

Appellee was severely injured. It is not contended that if liability exists the amount of the judgment is excessive.

ADDISON L. GARDNER, for appellant; WILLIAM W. GURLEY, of counsel.

DENEEN & HAMILL, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Appellant's attorneys insist that the judgment in this case must be set aside upon the ground that under the evidence appellee's injuries were not caused by any negligence on the part of appellant. This is without doubt the controlling question.

The negligence charged in the declaration is that appellant failed and neglected to take precautions to protect or guard the third or "live" rail used for transmitting electric power to propel its trains, or to give any notice or warning by signs or otherwise of the presence or location of said live rail; also that the road and appliances, including the ".live rail," were so constructed that they were all easy of access to children of tender years and of little judgment and discretion; and, further, that these appliances were enticing and attractive to such persons who were in the habit of frequently climbing upon said elevated road and playing upon the elevated structure.

We find in the record no evidence tending to show that boys had been in the habit of climbing or playing upon the elevated structure, and the trial court properly instructed the jury to disregard all statements as to boys having climbed the columns, other than testimony relating to appellee and the companion who followed him up on the occasion when the accident in controversy occurred. The top of the elevated structure where the cars run and where the live third rail is located had never, so far as appears, been visited by children. Appellee had lived in the locality for a year and was familiar with the structure both as it appeared to boys playing underneath and as it appeared to one who had frequently ridden upon trains propelled on its surface, but he had never before climbed on the structure. Nor does it appear that the top of the structure was easy of access. According to appellee's story it was difficult of access. The aperture through which he says he " wormed " and " muscled " himself up, was a " little " hole, which he "just could get through." His companion gave up the

first attempt and succeeded in the second after watching and following appellee.  It would doubtless be extremely difficult, if not` practically impossible, to erect a structure of this character which will be ·an` absolute barrier to any youthful ingenuity, perseverance and skill,.and the law only requires the exercise of ordinary or reasonable care and prudence in this respect.  A. & E. Ency. of Law, 462; C. & G. T. Ry. Co. v. Stewart, 77 Ill. App. 67, 69.    Without going into further details, it is evident from the testimony that the getting up was an achievement on the part of appellee which might have been impossible to a boy of less enterprise or larger frame, and that appellant had used ordinary care in· view of the dangers to be apprehended. Reasonable care does not require such precautions as will absolutely prevent injuries or render accidents impossible. A. & E. Ency. of Law, p. 464; Sjogren v. Hall, 53 Mich. 274–278.

Nor was there anything on the surface of the road-bed or top of the structure naturally attractive or enticing to children.    There was no place there to play and nothing to play with.    On the contrary, the trains within a restricted area naturally suggest danger to the minds of young and old alike, even to children who` might be ignorant of the live rail and the mysterious force by which the trains are propelled.    In fact, both boys were frightened in one way or another, as they state, when they found themselves on the road-bed.    It was not an attractive or alluring place as all reasonable minds must agree.    Appellee was not enticed or attracted by anything on the road-bed pertaining to the structure itself.    He went up to look for a ball which he had been told was there.    It was not his own, if indeed it was there at all.    This supposed ball, with perhaps the implied challenge to dare a dangerous venture to obtain it, was the sole attraction.

It is said that the absence of warning signs giving notice of danger from the third rail was, negligence.    This live rail was located on an elevated structure, out of the way·of the general public, in a place of evident danger from pass-

ing trains, where strangers young or old were not expected to have any occasion to go and which could be reached only at the expense of unusual effort put forth for the express purpose. The structure itself was a warning that none were expected to get on it.

There is evidence undisputed that no method has been devised and none is known to electrical engineers which is practicable, for covering the third or "live" rail used in operating trains, so as to afford protection from the danger of contact with it. When located in an exposed or frequented or easily accessible place where even trespassers to appellant's knowledge had been previously attracted, the railroad company may well be required to exercise a high degree of care to guard against access to such a danger. It appears however from appellee's statement that he had passed safely over the dangerous rail, and was on the footboard between the tracks, provided by the company for use of its employees. While walking there he became, as he says, frightened, and his attention being perhaps momentarily diverted, he stumbled and fell against the electric rail. The proximate cause of his coming in contact with the danger was apparently the stumbling which caused him to fall. This was not so far as appears due to any failure of duty on the part of appellant. In Sjogren v. Hall, 53 Mich. 274–278, *supra*, it is said: "A man stumbling in a blacksmith shop might have his hand or even his head thrown under the trip-hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible."

It is said that appellant ought to have anticipated that persons would climb up the posts or columns of the elevated road and did anticipate it at or near its stations; and that to guard against this, planks were fastened over the lattice work of the columns there in order to prevent climbing on

the station platforms by persons seeking to ride without paying fare. There is evidence to this effect. But this extra precaution seems to have been taken at or near stations, for protection against trespassers who might be subject to special temptation at those points. We cannot say that in the use of ordinary care it should have been reasonably foreseen that such extra precautions would be needed where there was no such temptation to climb on the tracks, and so far as appears no temptation existed. "Where the use of premises is not contemplated, as in the case of trespassers, the proprietor is not as a rule negligent in failing to maintain the premises in a safe condition for the simple reason that injury to others is not reasonably anticipated." 21 Ency. of Law, p. 471, cited by appellee.

We are compelled to conclude, therefore, there is no evidence tending to show that boys of tender age or others had been in the habit of climbing upon the top of the elevated structure where appellee was injured, for purposes of play, or otherwise, prior to the accident in this case; that the live rail on the top of the structure was not exposed, unguarded, and easy of access from the street; that there was nothing on the surface of the road-bed or top of the structure attractive or alluring to childish instincts; and that appellant had so far as appears no reason to anticipate that children or others would endeavor to resort to it at that place.

In view of these facts, the case does not come under the exception to the general rule that the law does not require the owner or occupant of premises to keep them in safe condition for the benefit of trespassers or those who come upon them without invitation, express or implied. That exception is, that if the owner has left exposed and unguarded things of such a character as to be attractive to a child of tender years, appealing to his childish curiosity and instincts, and which cause him injury, such owner may be liable even though the child may be a technical trespasser. City of Pekin v. McMahon, 154 Ill. 141–147. It is said in that case (p. 149) that in many if not all of the "turn-table"

cases there cited, some of which are referred to in the briefs of counsel in the case at bar, " stress is laid upon the facts, that the turn-table was in a public or open and frequented place; that it was dangerous and left unfastened, and when in motion was attractive to children by reason of their love of motion ' by other means than their own locomotion,' and that the servants of the railroad companies knew or had reason to believe that it was attractive to children, and that children were in the habit of playing on or about it.    The doctrine of the cases is, that the child cannot be regarded as a voluntary trespasser, because he is induced to come upon the turn-table by the defendant's own conduct. ' What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years,' " citing Keffe v. Mil. & St. Paul Ry. Co., 21 Minn. 207, etc.    The case of U. P. Ry. Co. v. McDonald, 152 U. S. 262, cited by appellee, is based upon the same doctrine, and the court cites and considers Lynch v. Nurden, 41 Eng. Com. L. Rep. 423 (1 Ad. & Ellis N. S.), Railroad Co. v. Stout, 17 Wall. 657, Keffe v. Mil. & St. P. Ry. Co., *supra*, Powers v. Harlow, 53 Mich. 507, and others of like character.    We do not regard them applicable in the present case.

Appellee went upon the premises voluntarily and of his own motion.  But it is urged that he was not a trespasser, because he was, it is said, attracted to the premises by an appeal to his instincts as a child, and is therefore to be considered as on appellant's premises by invitation.    As we have indicated, the evidence does not tend to show that any invitation express or implied was extended to appellee to go upon the structure.    He went for his own pleasure, in the hope of acquiring a ball.    If the ball was there at all, of which there is no proof, it was not put there by, nor in consequence of, any act or omission of the appellant.    Nor does it appear that appellant had the slightest reason to suppose a ball ever would be there, in that locality.    Appellee was at the time of the injury a boy over ten years of age, and whether in law guilty of contributory negligence or not, he knew as well as an older person that the " trains

used to run by there all the time," and that elevated rail-road tracks were not a safe place to go. He denies that he knew there was danger from electricity, but says only that he does not know whether he told his companion to look out for the third rail, as the latter states. However that may be, the difference between the case at bar and the turn-table cases where the place of danger was open, easy of access, frequented by children, and in itself attractive, is so wide that we can discover no ground of comparison and no basis for the application of the doctrine of those cases. To extend it to a case like the present would be to extend it beyond precedent and to violate well established princi-ples. In I. C. R. R. Co. v. O'Connor, 189 Ill. 559–564, it is said : " It is a general rule, that in order to maintain an action for injury to person or property by reason of negli-gence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff which the de-fendant had left undischarged or unfulfilled. This court is committed to the doctrine that a railroad company in the operation of its trains owes no duty to a trespasser upon its right of way or tracks except that it will not wantonly or wilfully inflict injury upon him." In Heimann v. Kinnare, 190 Ill. 156, (p. 159) the general rule is again stated that the owner or occupant as against trespassers is not required to keep his premises in a safe condition, and that if a person goes upon such premises without invitation express or im-plied to gratify curiosity or for pleasure, he does so at his peril and can only recover for gross negligence or wanton conduct on the part of the owner or occupant. This doc-trine is questioned by appellee's attorneys, who cite A. & E. Ency. of Law, title " Negligence," vol. 21, p. 471, where it is said : " It seems misleading in the extreme to state that no duty is owing to trespassers or licensees or persons not on the premises by invitation express or implied. No duty is owing only where injuries should not reasonably be anticipated"; otherwise, " the owner of premises will be liable for a failure to take reasonable precautions to prevent injuries to the trespasser."

It is argued that one may be at times an inadvertent or even involuntary trespasser just as he may be a licensee, and should not therefore be deprived of his remedy if injured. But so far as we are advised, the nature of the trespass does not affect the right and duty of the owner in the proper use of his own premises. Such inadvertent or involuntary trespass may be in the nature of an accident for which possibly neither trespasser nor owner is blameworthy. In the case before us the presence of appellee at the place of danger was not inadvertent. It was intentional. The fact that he was a boy over ten years of age created no liability to him as a trespasser or even a licensee, where the owner had given him no invitation express or implied. In Gibson v. Leonard, 143 Ill. 182–189, referring to Sweeny v. Railroad Co., 10 Allen, 368, it is said : " A licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils."

A reason for the rule as to trespassers may perhaps be found not necessarily in the fact that they are wrong-doers, but that by going in pursuit of their own pleasure or convenience upon the premises of another, who has a right to make a proper use of his own premises upon the assumption that strangers will keep away from° a place where they have no right to be, such persons are not merely contributors to any injury they may there sustain, but active in inflicting the injuries upon themselves except when wilfully or wantonly hurt. In the McDonald case, *supra*, it was held that as against an unseen and concealed danger, unprotected, upon premises where visitors were not infrequent, a boy of twelve years could not be regarded as a mere trespasser. But the facts here do not permit the application of the reasoning or rule of that or the Stout case, *supra*.

In Sullivan v. Boston & A. R. Co., 31 N. E. Rep. 128, a decedent, with other boys, had been playing ball near a

coal shed when the ball was batted so that it fell on the roof, and the decedent went after it. While on the roof he came in contact with two naked copper wires fastened to the roof and used to conduct electricity from a dynamo-electric machine in an adjoining building for the purpose of lighting defendant's station and works. The court says: "If the plaintiff's intestate was not a trespasser, which we do not decide, he was at most a mere licensee; and so far as he was concerned, the defendant had a right to arrange and use its property in any lawful manner, and owed him no duty with respect to it, except to refrain from setting a trap for him and from doing him intentional or wanton harm (citing cases). The live electric wire with which deceased came in contact was a lawful apparatus, used in the ordinary business of the defendant and was not designed as a trap." In Erickson v. The Great Northern Railway Co., 82 Minn. 60, the Keffe case, *supra*, is distinguished, and it is said that " the law does not as a general rule, impose restraints and conditions upon an owner's lawful and necessary use of his land, which is only dangerous to persons who intrude thereon." See also San Antonio & Ark. Pass. Ry. Co. v. Morgan, 92 Tex. 98; Simonton v. Citizen's Electric Light & Power Co., 67 S. W. Rep. 530. In the case at bar the third rail is a " lawful apparatus used in the ordinary business of the defendant," upon its own premises, in a lawful manner. We are of opinion that appellee's injuries complained of were not caused by negligence of the appellant.

Negligence may "become a question of law, if a single material fact is conclusively shown or uncontradicted, the existence or non-existence of which is conclusive of a right of recovery." Wabash Ry. Co. v. Brown, 152 Ill. 484–488. And when the facts are undisputed and the court can say that but one reasonable inference can be drawn from such facts, then the question becomes one of law. Heimann v. Kinnare, 190 Ill. 156–160; Hoehn v. C., P. & St. L. Ry. Co., 152 Ill. 223–229. The facts relevant to the charge that appellee was injured in consequence of appellant's negli-

gence being undisputed, that question becomes, as above stated, one of law for the court; and for the reasons indicated, we are obliged to conclude as a matter of law, that appellee is not entitled to recover, holding as we do that the facts·as found by both the Superior and this court are insufficient to sustain the action.    Busenbark v. Saul, 184 Ill. 343–344–346.    It was therefore error to refuse the instruction asked for by appellant's attorneys at the close of all the evidence directing a verdict of not guilty.

The judgment of the Superior Court must be reversed.

*Reversed.*

Mr. Justice STEIN having presided at the hearing of this case in the trial court, did not participate in the foregoing decision.