### Rosina Pamler v. Maud Byrd.

#### Gen. No. 12,915.

1. DEGREE OF CARE—*required of owner of land, etc.* As a rule, the owner of land and buildings assumes no duty to one who is on his premises by permission only, except that he will refrain from wilful or affirmative acts which are injurious.

2. LANDLORD AND TENANT—*who liable for personal injuries sustained by third party.* The tenant and not the landlord is liable for personal injuries sustained by a third party by reason of the failure to keep the premises in question in repair. The landlord is only liable where he has leased the premises with a nuisance upon them or has assumed by contract the obligation to repair.

3. CONTRIBUTORY NEGLIGENCE—*when person leaning against railing of porch guilty of.* A person knowing that one end of the top of a railing is loose and liable to give way is guilty of contributory negligence in leaning against it without previously examining and testing it.

Action in case for personal injuries. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed, with finding of facts. Opinion filed February 19, 1907.

**Statement by the Court.** This is an appeal from a judgment obtained by appellee in a suit brought to recover for personal injuries. The accident occurred in February, 1905.

Appellant was the owner of a two-story building in the city of Chicago Heights. This house had been erected about seven years at the time of the accident. It was occupied by four families as tenants of appellant. Appellee was the occupant of apartments upon the second floor, the entrance to which was by

a hall and stairway leading from a front door below opening on a porch in front of the house. This porch was eight feet long, four feet wide and about four feet above the ground. Steps which extended along the full length of the porch led down to the sidewalk. On the east end of the porch was the railing about four feet in length, which, it is alleged, was the cause of the accident and injury complained of.

Upon July 26, 1905, appellee had swept down the stairs leading to her apartments on the second floor and was sweeping off that part of the front porch connected with and pertaining to the entrance to the premises which she occupied. In doing this some dirt appears to have been swept under the railing in question and appellee leaned over it to sweep off the edge of the porch outside the railing. She states she had just leaned over and begun to sweep when the railing broke and she fell to the ground, receiving the injuries complained of. The railing itself was about three and a half feet high, according to appellee's testimony, and extended across the east end of the porch.

The jury found the issues in favor of appellee and assessed her damages at the sum of $1,250. Plaintiff remitted $500 from this amount and judgment was rendered for $750, from which judgment this appeal is prosecuted.

LINDHOUT & LINDHOUT, for appellant.

GEORGE A. BRINKMAN, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that appellee's injuries were occasioned by a lack of ordinary care on her part at the time of the accident, that she knew the railing was at the time out of order and that the part of the porch containing the railing which gave way was included in the premises leased to appellee which,

in the absence of any express agreement to the contrary, it was the duty of the tenant to keep in repair.

Appellee's testimony is to the effect that the porch was used by herself and family and by a Mr. and Mrs. Lukey, who occupied premises on the first floor, entrance to which was had by a door west of that giving entrance to the premises occupied by appellee and her family; that the accident occurred in the summer, that she was in the habit of sitting on the porch in the evening, that it might be she had sometimes sat on the railing; that she first knew there was something wrong with the railing that afternoon about half an hour before the accident when her attention was called to it by Mrs. Lukey, that she did not know the railing was in any dangerous condition at all, that Mrs. Lukey "didn't mention it was in a dangerous way at all," that she said "something was wrong," and that spindles were out in consequence of which the children might fall through. Mrs. Lukey, whose deposition was taken in Detroit, testifies that the railing was loose at one end, that appellee and she talked about it a few days prior to appellee's fall and the latter "made the remark that she was afraid the children might fall." Her testimony is that appellee first called attention to the condition of the railing, whereas appellee states that Mrs. Lukey was the first to call attention to it. Both agree that the conversation occurred before the accident in controversy. Mrs. Lukey states that one end of the railing was loose several days before appellee fell, that the nails had rusted and the wood had become rotted away to some extent. It can scarcely be deemed an exercise of due and ordinary care on the part of appellee to lean against the railing as she did, knowing its condition.

The testimony is conflicting as to whether the railing in question and the part of the porch upon which it stood was included in the premises leased to appellee and her husband. The lease was verbal and the parties disagree as to its terms in this respect. As said in

Payne v. Irvin, 144 Ill. 482-489: "The landlord as to that portion of the building and appurtenances over which he retains control must be held to also retain the responsibility to keep the same in reasonable repair in respect of all persons, including the tenants of the building." Appellant's husband acted as her agent in leasing the premises and states that the agreement with appellee's husband included the rental of the half of the porch which contained this railing; that he requested appellee's husband in case the railing became loose to drive a nail in and the latter agreed to do it. This the latter denies, stating that he had no agreement whatever in relation to keeping the porch in repair. If we assume it was the duty of the landlord to keep the porch and railing in repair there is no evidence that the latter's attention had been called to the condition of the railing or that any complaint about it had been made. Appellee's husband states that he passed over the porch that morning and did not observe anything wrong with the railing.

It appears, however, that appellee and her family exercised the privilege of making use of the porch, occupying it summer evenings as a place to sit, keeping it clean as appellee was doing when injured, and that the railing itself, at least occasionally, was used by some of them as a seat. Appellee's sister, a young woman visiting her at the time of the accident, testifies that she sat on the railing "lots of times" and sat there the night before the accident. This testimony tends to show that appellee and her family as tenants, at least regarded themselves as privileged to occupy the porch as part of or in connection with the leased premises, and not merely as entitled to use it in passing to and from their apartments up-stairs. It appears that no one else used that east part of the porch. It is evident from the testimony introduced in behalf of appellee that the condition of the railing when the premises were let was not such as to create a nuisance. If it was able to sustain the weight of a young woman

sitting upon it the night before the accident, the railing could not have been regarded even then as in an obviously dangerous condition.

As a rule the owner of land and buildings assumes no duty to one who is on his premises by permission only, except that he will refrain from wilful or affirmative acts which are injurious. Gibson v. Leonard, 143 Ill. 182-189. If the porch and railing in controversy were not, as appellee insists, included in the lease, and she and her family had a mere easement of passage, their occupation of the porch and railing in other ways was either by permission of the landlord or they were trespassing. Under appellee's construction of what the lease included, appellant was under no obligation to appellee to keep the railing in such condition as to bear her weight when she leaned against it. It is only a want of ordinary care and skill in respect to a person to whom the defendant is under an obligation or duty in that respect that can give a plaintiff a cause of action for negligence. As said in the case last referred to (Gibson v. Leonard, *supra*), quoting from Sweeny v. Railroad Co., 10 Allen, 368: "A licensee who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils." As a general rule it is the occupant and not the owner who is responsible for injuries arising from a failure to keep the premises in a proper state of repair. Tomle v. Hampton, 129 Ill. 379-383. It is evident therefore in this case that if appellee was occupying and using the porch and railing as a part of the leased premises, she cannot recover from the landlady, since in such case in the absence of any special agreement to the contrary it would be the tenant's duty to keep the railing in repair; and if she was there as a mere licensee by permission only, she took the risk at least of the known and obvious danger

of leaning against a railing she knew to be defective.
Knowing as she did that one end of the top of the rail-
ing was loose and liable to give way, it was certainly
contributory negligence to lean against it without pre-
viously examining and testing it.

In Flynn v. Hatton, 43 Howard's Practice Reports,
333-348, suit was brought to recover for damages oc-
casioned by the giving way of a piazza in consequence
of which injuries were sustained by a child. The de-
fect in that case, as in this, arose from natural decay
occurring during the tenancy, and it is said that 'per-
haps there was sufficient evidence to show that the
landlord by agreement was to make such repairs as
were needed to keep them in tenantable condition;
that conceding such obligations rested on the defend-
ant by virtue of the agreement for the letting, the
landlord was nevertheless not responsible to the plaint-
iff for the injuries sustained; that under breach of
such contract the party in default was only liable for
such damages as naturally and according to the usual
course of things would arise from the breach, or which
might reasonably be supposed to have been within the
contemplation of the parties when the contract was
made as a probable result of its breach, but not for ac-
cidental, remote or consequential causes. It was held,
however, that even if any obligation existed on the
part of the defendant as landlord growing out of his
duty to so use the property as not to cause injury to
others, nevertheless, the plaintiff was not entitled to
recover, inasmuch as the undisputed facts constituted
a clear case of contributory negligence.

It has frequently been held that the legal obligation
of keeping a sufficient railing is imposed only where it
is necessary to furnish a guard against a dangerous
place, so that proper protection may be afforded to
those who in the exercise of due care while passing or
standing might be exposed to accident or injury. If
under such conditions a person, without fault or neg-
ligence on his or her part, is forced against a railing

or takes hold of it to aid his passage or falls against it by accident, and by reason of any defect or insufficiency it gives way and causes an injury, there might be ground for recovery against one responsible for the defect; but this is said to be the extent of such liability. Parties are not bound by law to erect and maintain railings for persons to sit upon or lean against. If one uses them for such purposes, she does it at her own risk. The fact that such railing was defective and would have proved an insufficient barrier if one had run against it in the night accidentally, or had otherwise been injured in making legitimate use of it, would not be sufficient to justify a recovery under circumstances such as in the case at bar. If the accident had occurred while appellee was using the porch and steps passing up or down from the sidewalk to her own apartments, a different situation would be presented. This accident did not occur in that way. Stickney v. City of Salem, 3 Allen (Mass.), 374-377. Inasmuch as appellee received her injury while leaning against the railing, and there is no evidence of any necessity or exigency which required her to use the railing at all for that purpose, it cannot be maintained that she was injured while in the exercise of any lawful right which would entitle her to maintain this action. Arcutt v. Kittery Point Bridge Co., 53 Maine 500-504; Balch v. Garling (Sup. Ct. Ga.), 29 S. E. Rep. 146. In Kinney v. Onsted, 113 Mich. 86, the legal situation was not unlike that in the case at bar. The plaintiff was injured by the giving way of the railing about an elevated platform on private premises against which he was leaning for the purpose of talking to persons below him. The court said: "The weakness of the plaintiff's case arises from the fact that this railing was put to a use for which it was not intended;" and that before the railing "could become a snare or trap it must be assumed that its apparent good condition was an invitation to make such a use of it as the plaintiff attempted. As we have said, its presence was not

an invitation to make that use of it." See City of Chicago v. Powers, 117 Ill. App. 453-455. The accident was unfortunate, but under the evidence it was one for which appellant cannot be held responsible.

For reasons indicated the judgment must be reversed with a finding of facts.

*Reversed with finding of facts.*