ELIZA MOFFATT *vs.* CHARLES KENNY & another.

Suffolk.     January 17, 1899. — October 18, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
& HAMMOND, JJ.

*Personal Injuries — Licensee — Liability of Owner of Premises on Private Way
for Unsafe Condition not amounting to Trap.*

An owner of premises is under no liability for their unsafe condition caused by a
mere failure to use ordinary care for the safety of persons who may chance to
go there by permission, while he is using the place for his own proper purposes
and is not intending needlessly to expose others to danger.

TORT, for personal injuries. Trial in the Superior Court,
before *Dewey*, J., who reported the case for the determination
of this court, in substance as follows.

On April 25, 1828, the owners in common of a way then
called B Street and now called Byron Street in Boston and its
adjacent territory made partition of their lands by an indenture
duly recorded, which indenture contained a covenant providing
that Byron Street should be forever reserved and kept open
for a public street, " and ceded to the city government as such
whenever they will accept the same." The city council of
Boston has never passed any vote or order with reference to
Byron Street, except an order passed on September 27, 1847,
releasing the right to extend it, and the city has never made
any repairs thereon. Signs bearing the words, " Private way,
dangerous passing," were posted by the city more than thirty
years ago on the corner houses on the sides facing upon the
street and at each end thereof, and they remained there at the
time of the accident to the plaintiff. Byron Street runs east
and west, parallel to and next north of Beacon Street, and at
the time of the accident connected two public streets running
at right angles to it, named Brimmer Street and River Street.
On both sides of Byron Street sidewalks extend from Brimmer
Street to River Street. The south sidewalk, nearest Beacon
Street, is brick throughout its length and adjoins the back yards

and ells of houses which face Beacon Street, there being no houses on that side which face Byron Street. The character of the buildings on the north side varies, that is, next to River Street are three dwelling-houses facing Byron Street; next to Brimmer Street is a carriage factory, and between the factory and the dwelling-houses the space is occupied by private stables. The defendants occupied the stable next west of the three dwelling-houses. The sidewalk on this, the north side of Byron Street, consisted of an ordinary brick walk in front of the dwelling-houses, and a plank walk in front of the carriage factory, while in front of each of the stables it was made up of stone flagging, a cobbled driveway, and planks set into the walk which were coverings for manure pits so called; and these pits extended out under the sidewalk from the several stables. The sidewalks on both sides of the street were properly curbed. The defendants occupied as a stable the premises on the north side No. 4 Byron Street, including one of these manure pits, under a written lease of the entire premises. Their lessors obtained title by mesne conveyances from and under the indenture of partition, and held the same subject to the covenant therein contained concerning Byron Street.

The plaintiff, wishing to consult the former owner of a stable on Byron Street, entered the street from River Street. She crossed the street diagonally to the stable of the defendants, in the door of which stood a man, and stepping upon the sidewalk inquired the whereabouts of the person she was seeking. She was told that he had moved his stable to an adjoining street further north. She thereupon turned to leave Byron Street, using the sidewalk upon which she was standing, and had advanced only a few steps when she stepped upon a plank over the defendants' manure pit, and was thrown into the same, receiving the injuries complained of. There was nothing in the outward appearance of the plank to indicate danger, or that it was misplaced. In 1838, the north side of Byron Street was occupied by stables, there were sidewalks on each side, and the street was in common use by the public generally. Since 1838 the conditions have not changed to any material extent, and the street has been used at will not only by people having business there, but by others passing from Brimmer Street to River

Street in the same way as other formally laid out public streets in that vicinity.

The so-called manure pit into which the plaintiff fell was included in the premises leased to the defendants, and was used by them in connection with their stable, which it adjoined. The pit had been used on the day of and prior to the accident for the purpose of removing the accumulations therein. After the removal of the manure the planks were laid over the opening and left in the condition in which they were at the time of the accident. The pit was five feet in depth, nearly as wide as the sidewalk, and six feet long. It was covered with detached planks, running lengthwise with the street, which were supported in the centre by a beam beneath, at right angles with the planks, and at each end by a stone shelf or rabbet, so cut that the top surface of the planks when in place was level with the surface of the sidewalk. The opening of the pit was longer on its street side than on its stable side, and the outside plank was therefore the longest and the inside plank the shortest. At the time of the accident the planks had been misplaced, and the plaintiff stepped upon the end of a plank which was supported only by the rabbet at the end farthest from her and by the beam in the centre, the farther end of the plank flying up and striking her violently as she fell into the pit.

At the request of the defendants, the judge ruled that, upon the whole evidence, the plaintiff was not entitled to recover; and directed the jury to return a verdict for the defendants.

If the ruling was right, the verdict was to stand; otherwise a new trial was to be ordered.

The case was argued at the bar in January, 1899, and afterwards was submitted on briefs to all the justices except *Loring*, J.

*C. W. Bartlett & J. D. Colt,* (*F. Rackemann* with them,) for the plaintiff.

*G. L. Wilson,* for the defendants.

KNOWLTON, J. The place where the plaintiff fell was not a public way for whose condition the city of Boston was responsible. In this Commonwealth there can be no public way by dedication without an acceptance of it by the public authorities. Before the enactment of St. 1846, c. 203, such an acceptance

could be shown either by a vote to accept, or by circumstances giving rise to a strong implication, such as frequent and long continued use by the public, and repairing, lighting, or other significant acts of persons authorized to represent the city or town in that behalf. *Hemphill* v. *Boston*, 8 Cush. 195. While public use may be important as evidence, it is not of itself sufficient to show such an acceptance.

Since the enactment of the statute above referred to there can be no effectual acceptance without a laying out of a way in the ordinary mode prescribed by the statutes. Pub. Sts. c. 49, § 94. *Hobbs* v. *Lowell*, 19 Pick. 405. *Bowers* v. *Suffolk Manuf. Co.* 4 Cush. 332. *Morse* v. *Stocker*, 1 Allen, 150. *Hayden* v. *Stone*, 112 Mass. 346. *Guild* v. *Shedd*, 150 Mass. 255.

In the present case there is no evidence tending to show an acceptance except the evidence of public use, and that alone will not warrant a finding that the street is a public way by dedication.

There is no evidence that it is a public way by prescription. *Durgin* v. *Lowell*, 3 Allen, 398. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330. By the indenture of April, 1828, the owners covenanted that the land now known as Byron Street should be forever " reserved and kept open " for a public street, " and ceded to the city government as such whenever they will accept the same." This was an agreement among the land owners that the public should be permitted to use it until it should be accepted as a street by the public authorities. The public authorities never accepted it. The evidence tends to show that in 1838 the public began to use it under this license, and continued their use up to the time of the accident. In the absence of evidence to show the contrary, it must be assumed that this use which began under a license has continued to be permissive. There is no evidence that it was ever under a claim of right. An adverse right to an easement cannot grow out of a mere permissive enjoyment. *Bachelder* v. *Wakefield*, 8 Cush. 243 and cases cited.

There is no evidence that the plaintiff was using the way by invitation. She was walking there as one of the public under a license, and had the ordinary rights of a licensee. There is a class of cases where one is upon private land without an invi-

tation but by permission and for his own convenience, in which there is a representation, express or implied, that constitutes an inducement to a licensee, and creates a duty on the part of the land owner to use due care to have the place as represented. For illustration, if one passing over land as a mere licensee, for his own purposes, should be told by the owner that he would find a certain course safe and convenient and should walk there, the representation of the owner would impose upon him a duty to use reasonable care to have the place safe for the person acting on his statement; or, if he should represent a way across his land to be a public street, his representation would be equivalent to a statement that the place was safe and convenient for travellers, and it would be his duty towards one induced to use it by his representation, to keep it as safe as if it were a public street. See *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368; *Murphy* v. *Boston & Albany Railroad*, 133 Mass. 121; *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495; *Holmes* v. *Drew*, 151 Mass. 578; *Plummer* v. *Dill*, 156 Mass. 426, 430. This is not such a case. The way was doubtless opened for the benefit of the owners and occupants of the adjacent lands, and it has never become a public street. The presumption is that it was maintained for the use of these occupants and such other persons as had occasion to visit them, and that the use of it by the public was merely permissive. *Bowers* v. *Suffolk Manuf. Co.* 4 Cush. 332. *Durgin* v. *Lowell*, 3 Allen, 398. *Pearson* v. *Allen*, 151 Mass. 79, 82. *Stevens* v. *Nichols*, 155 Mass. 472. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330. Moreover, for thirty years before the accident there had been a representation posted at the entrance to the way from the street that it was a private way and was dangerous. This negatived any possible inference that it was a public way, and there is no implied representation by the land owners that the public could go there otherwise than as licensees using a way constructed and maintained for private persons.

It is a general rule that a licensee going upon land of another must take the land as he finds it. Of course the land owner is liable if he does him intentional injury, or wantonly or recklessly exposes him to danger. It has sometimes been said that he is liable for a trap upon his land. We are not aware of any

decision which distinctly defines the word "trap" in this use. It would at least include any very dangerous construction or condition designedly arranged to do injury. But we are of opinion that an owner is under no liability for an unsafe condition of his premises caused by a mere failure to use ordinary care for the safety of persons who may chance to go there by permission while he is using the place for his own proper purposes and is not intending needlessly to expose others to danger. Otherwise there would be no important distinction between his duty to licensees and his duty to invited persons. Certainly the mere fact that a particular danger resulting from a lack of care is not easily discoverable, ought not to create a liability on the ground that there is a trap. In most cases of accident the danger is not known until the injury is received, and often it is from an unseen cause. If there is mere inadvertence or carelessness in doing one's work, there is no good reason why, in determining whether there is a liability for it, one principle should be applied if the resulting danger is small and a different principle if it is very great.

The case of *Redigan* v. *Boston & Maine Railroad*, 155 Mass. 44, is decisive of the case at bar. In that case the plaintiff was walking in the evening along a platform of the defendant's station building, in a place where the public were permitted to walk and where she supposed it was safe to walk, and fell through a trap door which had been left for an hour open and unguarded. It was held that there was no evidence of negligence on the part of the defendant. In that case, as in this, there was nothing to indicate to the plaintiff at the time of the accident that the way was unsafe. In this case, as in that, a careful observer might have noticed that the surface of the way was arranged to be taken up, and that there was a possibility of disarrangement in opening and replacing it. *Reardon* v. *Thompson*, 149 Mass. 267, is a case in which the plaintiff fell into an open hole in the ground concealed by the darkness of the night. In neither of these cases was there such a trap as to create a liability on the part of the owner of the premises who permitted the plaintiff to walk there.

*Verdict to stand.*