MARTHA STEINKE, Appellant, v. H. J. HALVORSON, Northern Telephone Company, a Corporation, and Northwestern Telephone Exchange Company, a Corporation, Respondents.

(178 N. W. 964.)

**Negligence — complaint for injury from fall into basement stairway held to state cause of action.**

1. In an action to recover damages for personal injuries the complaint alleges that upon a cold day when the air was so filled with flying snow as to obscure plaintiff's vision and distract her attention more or less, she approached a meat market situated in a building owned by one of the defendants and in part occupied by the other; that there were two doors abutting the street, similar in appearance and adjacent to each other, but some 30 feet apart, one leading to the meat market and the other to a stairway leading to the basement of said building. The plaintiff, mistaking the stairway door for the meat market door, opened it and, stepping inside, was precipitated to the basement, sustaining injuries. It is *held*, for reasons stated in the opinion, that the complaint states a cause of action.

**Negligence — facts pleaded held to warrant finding of violation of ordinance against unguarded subterranean passage.**

2. Where a city ordinance renders it unlawful to leave open, unguarded, or uncovered any subterranean passage, or to suffer any opening or place of like nature to remain in an insecure or other unsafe condition so that persons may fall into or be otherwise injured by the same, it is *held*, under the facts pleaded

in the complaint, that a jury would be warranted in finding that the ordinance was violated.

Opinion filed June 24, 1920.  Rehearing denied September 10, 1920.

Appeal from District Court of Ward County, *Leighton*, J.

Reversed and remanded.

*McGee & Goss,* for appellant.

"The owner of a building holds it subject to the right of the public to prescribe reasonable safeguards and regulations for its protection and the interests of the individual must in such case give in to the requirements necessary for public safety."  Russell v. Fargo, 28 N. D. 300.

"Every person has a right to assume that every other person is obeying ordinances in force in the municipality in which they are staying and may regulate his conduct accordingly, and he cannot be charged with contributory negligence for failing to anticipate that the ordinance might be violated."  19 R. C. L. 883.

A violation of the ordinance is negligence per se.  Pittsburg R. Co. v. Hood, 36 C. C. A. 423; Cooley, Torts, §§ 736, 737; 2 Dill. Mun. Corp. 4th ed. § 1032; Hayes v. Mich. Central, 111 U. S. 410.

Even an excavation entirely outside the street line, but so near thereto as to endanger the traveling public, is held to be a nuisance and the continuance or maintenance thereof actionable.  Rowel v. Williams, 29 Iowa, 210; Smith v. Leavenworth, 15 Kan. 81; Abilene v. Cowperthwait, 52 Kan. 324, 34 Pac. 795; Niblett v. Nashville, 12 Heisk. 684, 27 Am. Rep. 755; City Council v. Hafers, 59 Ga. 151; Peoria v. Simpson, 110 Ill. 294, 51 Am. Rep. 683; Grove v. Kansas City, 75 Mo. 672; Fitzgerald v. Berlin, 51 Wis. 81, 37 Am. Rep. 814, 7 N. W. 836; Woods v. Groton, 111 Mass. 357; Boucher v. New Haven, 40 Conn. 456.

Had the city been joined as defendant in this action in proper season it could have been held.  19 L.R.A.(N.S.) 516 and cases there cited; Elam v. Mt. Sterling (Ky.) 117 S. W. 250, 20 L.R.A.(N.S.) 513 and extensive note at page 634 to 637, and cases cited in the note; Smith v. Milwaukee Builders Exch. (Wis.) 30 L.R.A. 504.

"Violation of ordinance in itself gives ground for private right of

recovery as between private persons." See exhaustive note in 5 L.R.A. (N.S.) 186; Sluder v. St. Louis Transit Co.; Stringer v. Ala. R. Co. 99 Ala. 397, 13 So. 75; Alabama R. Co. v. Anderson, 109 Ala. 299, 19 So. 516.

"A railroad company owes to trespassers the same as to others upon its track the duty of obeying a municipal ordinance." Erb v. Morasch, 8 Kan. App. 61, 54 Pac. 323; Alabama R. Co. v. Carter, 77 Miss. 511.

L. M. Ellithorpe, for respondent H. J. Halvorson.

"Where a descending stairway was parallel to the sidewalk, and there was sufficient barrier on the side thereof, the defendant was not bound to cause a barrier or gate to be maintained at the entrance; and it was error to submit to the jury the question whether it was negligent in failing to do so." Fitzgerald v. Berlin, 7 N. W. 836.

"To bolt headlong into a place little known, and where the senses cannot take note of it, is not the act of a prudent man and there is no chance for any other inference or deduction concerning it." Massey v. Seller, 45 Or. 267, 77 Pac. 397; cited and quoted with approval in Costello v. Bank, 34 N. D. 141.

Bangs, Hamilton, & Bangs (E. A. Prendergast, of counsel), for respondents Northern Telephone Company and Northwestern Telephone Exchange Company.

BIRDZELL, J. This is an appeal from an order sustaining a demurrer to the complaint. The action is one to recover damages for personal injury alleged to have been sustained as follows: During the month of February, 1917, the plaintiff had occasion to go to a meat market situated on First Avenue Southwest, in the city of Minot, in a building owned and controlled by the defendants, the defendant Northwestern Telephone Exchange Company being lessee. The day was very cold and the air was so filled with flying snow as to obscure the plaintiff's vision and to distract her attention more or less. As the plaintiff approached the public entrance to the meat market, she opened a door on the south side of the building, believing this door to be the one opening into the meat market, but instead it was another door in the same building adjacent thereto but some 30 feet from the meat market door and similar to it in appearance. The door which the plaintiff opened led to a stairway running down to the basement of the build-

ing, and as the plaintiff opened it and stepped in she fell down the stair-
way and was injured. It is charged that maintaining this stairway
entrance, abutting as it did upon the street and characterized by a sim-
ilarity of appearance to the public entrance to the meat market, was
dangerous and unsafe as to all who, being unfamiliar with the prem-
ises, might enter it by mistake; and that it was negligence on the part
of the defendants to so maintain this entrance.

It is further charged that the maintenance of this basement stairway
entrance in the manner stated was a violation of § 21 of the municipal
ordinances of the city of Minot, reading as follows:

"It shall be unlawful for any person in the city of Minot to leave or
keep open, uncovered, or unguarded any cellar door, pit, grating, vault,
or subterranean passage opening from, into, or upon any street, alley,
sidewalk, or public ground within the city of Minot; nor shall it be
lawful for any person to suffer any such door or vault, grating, or other
opening or place of like nature connected with the premises owned or
occupied by him to remain in an insecure or other unsafe condition so
that persons may fall into or be otherwise injured by the same."

The first and decisive question presented upon this appeal is whether
or not the complaint states facts which, if proved, would sustain a find-
ing by the jury of negligence on the part of the defendants. Regard-
less of the decision upon this question, from a common-law standpoint,
it might also be proper to consider whether or not the ordinance applies.
For if it applies, it may have such a bearing upon the duty of the de-
fendant as either to enlarge the common-law liability or raise a pre-
sumption of negligence, and if it does not apply it is proper to so deter-
mine for the purpose of settling the law of the case for submission to
the jury in case the complaint is otherwise sufficient.

In disposing of the questions raised on this appeal, we find it con-
venient to notice the contentions of the respondent, as these represent
the attack on the complaint.

Attention is given to the allegation that the plaintiff was an "invitee"
of the Valley Meat Market as this allegation apparently represents an
attempt on the part of the plaintiff to give color to her presence upon
the premises which might differ somewhat from that of a trespasser,
even though unintentionally or merely technically such. Conceding
that if the plaintiff were a licensee upon the defendants' premises the

defendants would owe her a greater duty to protect her from injury than if she were technically a trespasser, liability is not necessarily dependent upon the distinction. This will more fully appear from the discussion to follow. Suffice it to say here that we find it unnecessary to discuss liability from the standpoint of whether or not the plaintiff was technically a trespasser.

The respondent relies upon a general rule which may be stated in substance as follows (quoting from Gibson v. Leonard, 143 Ill. 182–189, 32 N. W. 183, 36 Am. St. Rep. 376, 17 L.R.A. 588:

"Actionable negligence, or negligence which constitutes a good cause of action, grows out of a want of ordinary care and skill in respect to a person to whom the defendant is under an obligation or duty to use ordinary care and skill. The owner of land and of buildings assumes no duty to one who is on his premises by permission only, and is a mere licensee, except that he will refrain from wilful or affirmative acts which are injurious."

That this general rule finds proper application in cases where licensees or trespassers enter upon premises which are so situated with reference to the public and the avenues of public travel as to involve no special duty toward those who come upon them out of curiosity or to subserve some private convenience, there is no room to doubt. Cusick v. Adams, 115 N. Y. 55, 12 Am. St. Rep. 772, 21 N. E. 673; Moffatt v. Kenny, 174 Mass. 311, 54 N. E. 851, 6 Am. Neg. Rep. 564. This principle may also negative liability in cases like the Illinois case of Gibson v. Leonard, supra, where a licensee is injured through using an instrumentality such as an elevator that is in an unsafe condition but toward whom there was no duty to maintain it in a safe condition. But where a building situated upon a busy public street is devoted wholly or in part to retail commercial use and is especially designed with a view to resort thereto by the public, we are of the opinion that there is a duty with respect to its construction and the manner of its maintenance that does not attach to premises designed purely for convenience in carrying on some private business that is not dependent upon the freedom of public ingress and egress.

We do not consider the general rule above stated and the adjudicated cases in which the rule has been applied to be in point under the facts in the instant case, nor has our attention been called to any authority

which does seem to be in point. Yet we think the distinction suggested above, based upon location and use, finds support in the cases relied upon by respondent and even in the English cases where the rule of nonliability finds its broadest application. In Hardcastle v. South Yorkshire R. & River Dun Co. 4 Hurlst. & N. 67, 157 Eng. Reprint, 761, 28 L. J. Exch. N. S. 139, 5 Jur. N. S. 150, 7 Week. Rep. 326, it was held that the defendant was not liable where the plaintiff's intestate in the night time had mistakenly deviated from an ancient footpath and fallen into an unguarded reservoir and drowned—the reservoir being some 20 feet from the footpath. The court, in rendering the opinion (Pollock, C. B.) drew a distinction based upon the degree of proximity of the reservoir to the footpath, saying: "We think the proper and true test of legal liability is whether the excavation be substantially adjoining the way." This can only be the test of liability provided some other consideration than the fact of the plaintiff's being a trespasser is decisive. The true principle, then, would seem to be that the duty is in proportion to the likelihood of injury to those who, at the time, are making proper use of a public highway and are injured as a consequence of the dangerous character of a construction or excavation adjacent thereto. That the test under the English authorities is not dependent upon the fact that the excavation is wholly on the land of the defendant is further illustrated by the case of Hadley v. Taylor, L.R. 1 C. P. 53, 11 Jur. N. S. 979, 13 L.T.N.S. 368, 14 Week. Rep. 59, where the hole into which the plaintiff fell was separated from the highway by 14 inches. These authorities are commented upon in Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175, and in Sanders v. Reister, 1 Dak. 151, 46 N. W. 680, and the principle recognized. The later New York case of Cusick v. Adams, supra, seems to give further recognition to the principle in holding that the defendant was not liable for an injury occasioned to the plaintiff by using an unsafe bridge which was a private bridge and not adjacent to the public highway, the last fact being emphasized. See also 3 Shearm. & Redf. Neg. 6th ed. § 703.

We are unable to perceive any distinction between the liability to technical trespassers or licensees who are injured by reason of falling into an unguarded excavation situated in close proximity to an avenue of public travel and a liability for so guarding an entrance to an excavation that it is apt to be mistaken for an entrance to a public market.

It is therefore our opinion that if the facts pleaded are proved, the jury would be warranted in inferring that the defendant was negligent in the manner in which it guarded the entrance to the basement where the alleged injury took place. 3 Shearm. & Redf. Neg. 6th ed. § 704

We have had some difficulty in arriving at a conclusion as to whether or not, under the facts pleaded, the defendants might be found to have violated the city ordinance above referred to. It will be noted that the ordinance purports to render it unlawful to leave open, unguarded, or uncovered any subterranean passage or to suffer any opening or place of like nature to remain in an insecure or other unsafe condition so that persons may fall into or be otherwise injured by the same. Being of the opinion that the jury would be warranted in finding the entrance to the basement to have been improperly guarded and the premises to this extent to have been in an insecure and unsafe condition, it would seem to follow that they would likewise be justified in concluding that the ordinance was violated. We therefore think it would be proper for the trial court to instruct the jury that if they should find conditions to exist such as are proscribed in the ordinance, and that the ordinance was violated thereby, the defendants would be prima facie negligent.

It follows from what has been said that the complaint states a cause of action. The order appealed from is reversed and the case remanded for further proceedings.

CHRISTIANSON, Ch. J., and BRONSON, J., concur.

GRACE, J. (specially concurring). This action, as appears from the amended complaint, is brought to recover damages for $13,150 for personal injuries claimed to have been sustained by plaintiff, through the negligence of the defendants, $3,150 of the damages claimed was for loss of time, for bills of expenses incurred, such as for hospital, drug, physicians' and surgeons' bills, and other necessary services, fees, and expenses paid and occasioned by the injuries hereinafter set forth. Of this amount $920 had been paid by defendant Halvorson.

Though the case was presented to this court on demurrer, it will not be necessary to set forth the entire amended complaint, to which the demurrer is interposed; but, it will suffice to set forth the material facts and matters alleged and relied upon.

From the amended complaint, it appears that defendant Halvorson, now and during all the times mentioned, is a resident and citizen of Minot, North Dakota, and is, and on the 19th of February, 1917, was, the owner in fee simple of lot twelve (12), Block three (3) of the original townsite of the city of Minot; that there was on said lot a brick building, approximately 140 feet in length, fully covering it, and beneath it there was a basement.

That the Northern Telephone Company, on the day of the injury, and for the year prior thereto, was a tenant in said building, and, as such, did jointly, with the Northwestern Telephone Exchange Company, and the owner of the premises, occupy and have possession of the entire basement underneath the building, and of the door, entrance and stairway leading into the basement, from the south side of the building; that, on January 1, 1916, the Northwestern Telephone Exchange Company purchased all of the corporate stock, corporation assets, and property at Minot, North Dakota, of the Northern Telephone Company, including its lease of the said building and basement, and of the joint rights of occupancy of the Northern Telephone Company, of and to said building and basement, and thereby became the owner of the Northern Telephone Company, defendant, and from and after January 1, 1916, did operate and conduct all of the business done at Minot, North Dakota, of the Northwestern Telephone Exchange Company, in the name of, and under and by and through the Northern Telephone Company, for the use and benefit of the Northwestern Telephone Exchange Company, which was controlled, operated, and owned by the Northern Telephone Company, and as a part thereof, did have the control, jointly, with said Halvorson, the owner of the building and the leasehold premises, and the entrance into the stairway and basement of the building.

That the side of the building, 140 feet in length, extends along First avenue; that there are two entrances on that side of the building, the one where plaintiff was injured, which leads directly to the basement, and another, 30 .feet distant therefrom, which leads into the Valley Meat Market. Each of the entrances had doors thereon. ·

On about noon of February 19, 1917, plaintiff went from her place of employment in Minot, on Main street, toward the Valley Meat Mar-

46 N. D.—2.

ket, to purchase meats, and intended to enter the meat market, and opened the door believed by her to be the door opening into the meat market, but which was not, but was one of the same exterior appearance, which was the entrance to the basement.

Extending from this door to the basement was a stairway; it was about 12 feet from the entrance down the stairway to the floor of the basement.

At the time plaintiff opened the door and stepped into the entrance leading to the basement, thinking she was entering the meat market, she was precipitated, with great force and violence down the stairway to the bottom of the basement, a distance of about 12 feet, and thereby sustained serious bodily injuries, alleged to be permanent.

Her right arm is alleged to have been broken or fractured in three places, the elbow joint stiffened, her back and backbone and spinal cord injured to such an extent as to permanently injure her nervous system, and to cause her to be permanently hysterical, nervous, and debilitated; that the injuries so received have caused in her abdomen a permanent burning sensation, very painful and disagreeable; that from said fall and the shock thereof, she has received a nervous disease or nervous malady of permanent and incurable nature; and that thereby she has suffered great mental and bodily suffering, pain, anguish and agony, and that she will be permanently incapacitated from work and labor; that she was confined to bed in the hospital continuously for two months, and obliged to employ physicians and surgeons, and pay expenses of travel to hospitals at Minneapolis from Minot, North Dakota, and to pay physicians' and surgeons' fees and drug and hospital bills and expenses, to the amount of approximately $750.

It is further alleged that she will be permanently incapacitated from working, and that she has lost thirty months from labor to the date of bringing this action, when otherwise she would have been working at a monthly wage of $80 per month; and that she is damaged by her loss of time in the sum of $2,400.

It appears that, at the time of the injury, she was thirty-two years of age; that prior thereto she was sound in mind and body, and in perfect health, and that she was then, and for years had been employed at her trade as an expert saleswoman, in dry goods and department stores,

and earning and receiving, for such services, an average wage of $80 per month.

That the entrance of the Valley Meat Market was a public entrance; that, on the day of the injury, it was very cold, and the air filled with flying snow, obscuring the vision and preventing her from seeing ahead of her, and that her attention was more or less distracted.

The complaint further charges, "that the said door and doorway, entrance, and stairway and basement, as so kept and maintained, was dangerous and unsafe to all who, unfamiliar therewith, might enter it, and was a dangerous pitfall and dangerous trap for the plaintiff, and for any person unfamiliar therewith, as was the plaintiff; and who might, believing the said doorway and entrance to be the doorway and entrance into said meat market, in attempting to enter through it into said meat market, but, instead, enter said door, and fall down said stairway into said basement, as did plaintiff, on February 19, 1917.

"And that the defendant, Halvorson, as owner of the said premises, and the Northern Telephone Company, the Northwestern Telephone Exchange Company, tenants thereof, carelessly, negligently, and in violation of an ordinance of the city of Minot, as hereinafter stated, and in disregard of the rights of the plaintiff, and all other such persons as might enter said door and doorway, did jointly, negligently, and unlawfully keep and maintain the said door, doorway, entrance, and stairway, and such portion of said premises as was immediately adjacent thereto, in its open and unguarded condition, as a dangerous pitfall and place, dangerous to the safety of the public and the plaintiff, and all of which was well known to be such to said owner and tenants.

"That it was then and there the duty of the defendants, Halvorson and the Northern Telephone Company, and the Northwestern Telephone Exchange Company, and each and all of them, well knowing that said Valley Meat Market was an occupant and tenant of said building of the defendant, Halvorson, and that its customers and invitees might easily and readily thus enter said doorway and be precipitated down said stair into said basement, to their great injury, through mistake or inadvertence, while going to, and in attempting to enter, and under the belief that they were entering, said Valley Meat Market,—to know the dangers of said dangerous place threatening such invitees and persons at, and long prior to the time that the plaintiff entered the same and was

thereby injured, and to discontinue and abolish said dangerous place and wholly remove its dangers and safeguard plaintiff from said dangers, instead of negligently and unlawfully permitting the same to remain as such dangerous place and pitfall, to entrap this plaintiff and others; that the defendants had, for a long time prior thereto, as plaintiff has subsequently been informed and believes, negligently and carelessly and in violation of said ordinance, permitted said danger and dangerous place to exist."

The ordinance pleaded, provides: "It shall be unlawful for any person in the city of Minot, to leave or keep open, uncovered, or unguarded, any cellar, door, pit, grating, or any vault or subterranean passage, opening from, into, or upon any street, alley, sidewalk, or public ground, within the city of Minot; nor shall it be lawful for any person to suffer any such cellar, door, or vault, grating, or other opening or place of like nature, connected with the premises, owned or occupied by him, to remain in an insecure or other unsafe condition, so that persons may fall into, or be otherwise injured by the same."

It is alleged that the defendants, each and all of them, did, on February 19, 1917, unlawfully and in violation of said city ordinance, keep and maintain said premises in the aforesaid condition, with the cellar door, doorway entrance and stairway, in an insecure and unsafe condition, so that the plaintiff did fall into the cellar, through the door entrance and down the stairway.

The foregoing substantially sets forth the substance of the complaint. The question presented is (assuming the truth of all that is stated in the complaint), Has plaintiff a cause of action? Our answer to this question must be in the affirmative. We are fully convinced the complaint stated a cause of action, and that the district court erred in sustaining the demurrer to it.

Leaving the ordinance aside for the present, we will first determine whether the complaint states a cause of action, exclusive of it; in other words, Does the complaint state a cause of action against plaintiff, at common law? We think it does. We think the allegations of the complaint were sufficient to show a cause of action against the defendants for negligence. In other words, that the negligence of the defendants, as alleged in the complaint, is actionable.

We think it was the duty of the defendants to use ordinary care to

keep the premises in question in such proper condition of safety, and to keep it free from the existence thereon of any dangerous condition, so that anyone, rightfully entering or being thereon, and while using ordinary care, would be reasonably safe in person.

The complaint shows there are two doors on the south side of the building, about 30 feet apart. The doors are similar in exterior appearance, so that one desiring to enter the meat market might easily assume the door opening into the basement was the one opening into the meat market.

The door of the basement opened to a place of great and immediate danger, while, for the purposes of this appeal, the door to the meat market must be presumed to have opened to a place of safety. To maintain these entrances in this way, and so that the entrance to the dangerous place might readily be taken as the entrance to the place of safety, constituted actionable negligence.

It was the duty of the owner of the premises, if he were to maintain an entrance to the basement, to have it in such condition that it was not a constant source of danger to any person, or the public, who might inadvertently make the reasonable mistake of assuming the entrance into the basement was that into the meat market.

The stairway leading into the basement was adjacent to the door. The owner must have known, or must be held to have known, that, if anyone inadvertently opened that door and stepped forward, as if to enter the meat market, where the door was similar in appearance, that he would be precipitated, with great force and violence, down such stairway of the basement.

The danger was hidden, so that any person, inadvertently entering, could not know the danger. The door was an invitation to enter; it was not locked, nor was there any sign thereon, giving any warning of danger.

If there had been no stairway, or, if the door opened into an elevator shaft, it would hardly be contended that defendant was not guilty of negligence; yet, if either of those conditions existed, it would scarcely be more dangerous than that which actually existed.

It appears plain that it was the duty of the defendants to keep and maintain the entrance in question in such safe condition as to protect

anyone from injury who might inadvertently enter, in the circumstances in which plaintiff therein entered.

The meat market was a place of business where anyone, and the public in general, might make purchases and transact the kind of business that was carried on there, and the plaintiff, as well as others, had a lawful right, in common with others, to enter the meat market and make such purchases as she desired; and while entering there, she was in no sense a trespasser, for she did not go on the premises to do an unlawful act, nor to do a lawful act in an unlawful manner; but she was lawfully on the premises to do a lawful act; she was not a mere licensee, as she had a lawful right to enter and be upon the premises, for the purpose of doing such business as was conducted on it, and which she, in common with the general public, were invited to do.

The premises were in part used for the conducting of the meat market thereon; it was conducted with the knowledge and consent of the owner of the property; he intended that business to be conducted there. The conducting of it was an implied invitation to the plaintiff, and all others who might desire to transact business there, to enter upon the premises. In such case, the owner is under obligation to use ordinary care to effect the reasonable security of those who do enter for the purposes of the invitation, and for the transaction of the business to which the invitation related.

In such case, it was the duty of the owner to use ordinary care to keep the premises in a safe condition, in order that no injury might be suffered by those invited, while they were on the premises.

The plaintiff had a lawful right to enter upon the premises, the same as she had a right to enter any other place of business open to the public; and she intended to enter the meat market when she inadvertently entered the door to the basement.

Taking up now the consideration of the question of whether or not plaintiff has a cause of action, by reason of the violation of the ordinance above set forth, resulting in injury, on the theory that such is negligence of the owner and occupants, under that part of the ordinance which provides: "Nor shall it be lawful for any person to suffer any such cellar, door or vault, grating or other opening or place of like nature, connected with the premises, owned or occupied by him, to remain in an insecure or other unsafe condition, so that persons may fall into,

or be otherwise injured by the same," we think she has a cause of action.

We think the complaint sufficiently shows that the door at the entrance of the basement was in an insecure and unsafe condition, so that persons might fall into, or be otherwise injured by the same, for there was nothing to prevent anyone from inadvertently opening this door and stepping into the basement, while their thought would be, they were entering the meat market.

There is nothing to show there was any notice on the door, such as "Not for public use" or "Keep out," such as might be some notice to the public, but we must assume that the doors were entirely unprotected and unguarded, and that the public had no notice of the dangerous condition existing.

It is apparent that the door itself was no protection, for if the door had not been there, the danger would have been apparent. It would seem that the entrance was more dangerous with than without the door, for with the door the danger was hidden.

We are of the opinion that the maintaining of the entrance to the basement, in the dangerous condition that it was maintained, was a violation of that part of the ordinance particularly referred to, and, as such, constitutional actionable negligence; and that the complaint, in this regard, states a cause of action.

For the foregoing reasons, we think, the demurrer should have been overruled.

ROBINSON, J. (dissenting). This is an action peculiar to the city of Minot. The plaintiff appeals from an order sustaining a demurrer to the complaint. As she avers, on a cold day in February, 1917, when the flying snow obscured her vision and distracted her attention, she went along First avenue to her meat market, which was in a building owned or occupied by the defendants. As she went along the side of the building she came to a door within 30 feet of her market, and mistaking it for the market door, which it resembled, she opened the same, entered the building, fell down a stairway into the basement and was seriously injured. The basement stairway she avers was unguarded and open and unprotected, and it had no railing. She says not a word concerning the width of the stairway, the manner of its construction or

as to how it came to be dangerous. Aside from the lack of a railing, it may have been a perfect and ideal stairway. She says not a word concerning the door which she opened and entered only that it was similar to the door of the meat market, with a similar entrance and on the same street.

She avers that at the time of the accident there was in force a city ordinance which made it unlawful to leave or keep open, uncovered, or unguarded any cellar door, pit, grating from, into or upon any street. But manifestly the ordinance has no bearing on this case. The ordinance does not forbid the construction of a basement stairway with a good door, nor does it require the door to be kept locked, barred, or bolted. In the opinion of Justice Grace it is said: "The door was an invitation to a person to enter and there was no sign on it giving a warning of danger." But that is error. The complaint does not contain a word concerning a sign on the door, and it is not true that a door is an invitation to enter it. On the contrary, it is a warning for strangers to keep away unless it be the door of a bank or business house, with a sign inviting entrance for business purposes.

As it appears, the plaintiff opened the door and entered. She did not use her eyes and look around and notice the difference between a small basement entrance and the big meat market. As usual, the door must have opened inward, but she did not hold onto the knob or the latch of the door and make sure of her footing. She just stepped forward or onto the first landing of the stairway and tumbled or rolled to the bottom.

Now the questions are: How have the defendants failed to observe any obligation to the plaintiff? And, if her injury was the result of her own negligence or the want of ordinary care, on what principle of law may she recover damages?

"An obligation is a legal duty by which a person is bound to do or not to do a certain thing." Comp. Laws, § 5763.

"Every person is bound without contract to abstain from injury to the person or property of another, or infringe upon any of his rights. Section 5942.

"Every person is responsible for, not only the result of his wilful act, but also for an injury occasioned to another by his want of ordinary care in the management of his property or person, except so far as the

latter has wilfully or by want of ordinary care brought the injury upon himself." Section 5948.

That is the law of the case. Now the question is, Does the complaint state facts showing an injury occasioned to the plaintiff by the want of ordinary care in the construction of the basement way or the door to it; or does it appear that by the want of ordinary care the plaintiff brought the injury upon herself. "Negligence is the lack of ordinary care. It imports a want of such attention to the nature and probable consequences of an act or omission as a prudent man ordinarily bestows on his own concerns." Section 10358. Does it appear that in the act of opening the basement door and advancing onto the stairway the plaintiff used the care that a prudent man or woman ordinarily uses? As an excuse, she avers that the day was very cold and the air was filled with flying snow, obscuring her vision and engaging and distracting her attention. But that was her own misfortune, and not the fault of defendants. It shows that she should have been doubly careful. It was at noonday that she went out from the place of her employment into the cold and snow. She took the risks of the storm and the risk of her distracted attention, and the chances are that she took the risk of fashionable high heeled shoes with narrow pointed toes. To a person of ordinary prudence and presence of mind, neither the basement stairway nor its closed door presented a trap, a pitfall, or a place of danger. Certain it is the complaint does not state facts showing any defect in the construction of the door or the stairway, and whether defective or not, the plaintiff had no right, license, or occasion to use the same.

In the brief of counsel for defendant this proposition is stated and well sustained by authorities: "In order to constitute actionable negligence, there must exist two essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury, and a failure to discharge the duty." Means v. Southern California R. Co. 144 Cal. 473, 77 Pac. 1002, 17 Am. Neg. Rep. 1, 1 Ann. Cas. 206; Kennedy v. Chase, 119 Cal. 642, 63 Am. St. Rep. 153, 52 Pac. 33, 3 Am. Neg. Rep. 520; Gibson v. Leonard, 143 Ill. 189, 17 L.R.A. 588, 36 Am. St. Rep. 376, 32 N. E. 182; Cusick v. Adams, 115 N. Y. 59, 12 Am. St. Rep. 772, 21 N. E. 673; Moffatt v. Kenny, 174 Mass. 315, 54 N. E. 850, 6 Am. Neg. Rep. 564; Rooney v. Woolworth, 74 Conn. 720, 52 Atl. 411.

The correctness of the above rule is conceded by Mr. Justice Birdzell, but without any averment of the complaint he assumes that there was some defect in the construction of the building, the door, or the stairway. He says: "But when a building situated upon a public street is devoted wholly or in part to retail commercial use and is especially designed with resort thereto by the public, that a duty with respect to its construction and maintenance does attach to the premises." No attempt is made to show any specified defect in the construction of the building, the door, or the stairway or to show that plaintiff had any leave or license right to open the door or enter upon the stairway. The conclusion of the learned justice is that the jury would be warranted in finding that the entrance to the basement to have been improperly guarded and the premises, to this extent, to have been in an unsafe and insecure condition. But that refers the decision of the demurrer to the jury, whereas the question is on the averments of the complaint. Wherein, by what words, does the complaint allege facts showing that the entrance to the building was unsafe or insecure? Does it not show affirmatively that in opening and entering the door the plaintiff was a trespasser and that she failed to observe ordinary care and prudence? Surely on a demurrer we may not refer the question to a jury.